Estate of Carlin: Evans, Appellant, vs. Carlin, Executrix, Respondent.

*December 10, 1924—January 13, 1925.*

*Limitation of actions: When cause of action accrues: Accounting: Money delivered for investment: Continuing trust: Necessity of demand: Claims against estates: Pleading.*

1. Technical rules of pleading do not apply to proceedings in county courts instituted upon claims against the estates of deceased persons; and an answer of the administrator constitutes an objection sufficient to put in issue the allegations of the claim and to require the same to be substantiated by sufficient competent evidence.   p. 440.

2. An arrangement entered into in 1900, wherein the deceased, the father of the claimant, should retain some $4,000 belonging to the claimant, invest and reinvest the principal, adding to it the interest, and in the end account to claimant for the principal and interest at not less than seven per cent., is construed to create a relationship in the nature of a continuing trust terminable at the will of either party; and there being no evidence that it was ever terminated prior to its termination by the death of the father, in the absence of demand no cause of action accrued to claimant until the father's death. p. 445.

APPEAL from a judgment of the county court of Grant county: E. B. GOODSELL, Judge. *Reversed.*

Claim of *Jennie Carlin Evans* against the estate of her father for money alleged to have been intrusted to him for investment. The facts cannot be more briefly and clearly stated than in the language of the findings of the trial court, which are:

"1. That on the 16th day of March, 1900, at the city of Chicago, Illinois, *Jennie Carlin Evans,* the claimant, turned over to her father, Patrick Carlin, the sum of $4,000 to loan for her at the rate of seven per cent., 'interest to stand and be paid to her with principal.'

"2. That thereafter Patrick Carlin fully performed his said agency by loaning the money intrusted to him to various persons in the state of Wisconsin in the name of *Jennie Carlin Evans.*

"3. That the agency of Patrick Carlin was not a continuing agency for the loaning of the money for the claimant, *Jennie Carlin Evans,* but was terminated when the said money had been loaned in her name.

"4. That the transaction set out in the claim or complaint of *Jennie Carlin Evans* did not create a trust.

"5. That Patrick Carlin, the decedent, did not acknowledge or in any way recognize any such transaction or any obligation to the plaintiff within twenty years next prior to the filing of the claim herein, or the commencement of this action.

"6. That there is no proof that Patrick Carlin failed to perform his duty toward the claimant in connection with the transaction set out in the claim or complaint herein.

"7. That said claim or alleged cause of action did not accrue within twenty years before the filing of the claim or the commencement of this action."

The trial court concluded, as a matter of law, that the instrument executed on March 16, 1900, by Patrick Carlin and *Jennie Carlin Evans,* which is as follows:

"In the year of 1900, March 16, *Jennie Carlin Evans* gave her father, Patrick Carlin, four thousand dollars to

loan for her, interest to stand and be paid to her with the principle at a rait of seven per cent.

X

(Signed)     "Patrick Carlin.
              "Jennie Carlin Evans,"—

created the relation of principal and agent under the facts found; that the claim was barred by the provisions of secs. 4222 and 4227, Stats., relating to limitation of actions, and wholly disallowed the claim. From the judgment entered in accordance with the view of the trial court the claimant appeals.

For the appellant there was a brief by *Fred J. Crowley* of Chicago, *J. E. Barnett* of Boscobel, and *Brennan & Carthew* of Lancaster, and oral argument by *Harry E. Carthew.*

For the respondent there was a brief by *H. E. G. Kemp* of Boscobel and *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp.*

Rosenberry, J. As the trial court said:

"The undisputed evidence in this case is that on the 16th day of March, 1900, *Jennie Evans,* the claimant, turned over to her father, Patrick Carlin, the sum of four thousand dollars, he undertaking to invest it for her and pay her seven per cent. on the investment. There is nothing to show that this money had ever been repaid to *Mrs. Evans,* the claimant."

In the consideration of the case these facts should not be lost sight of.

It is claimed that the answer fails to raise an issue of fact because it alleges: "As to all the allegations in said complaint contained, this answering defendant has no information or belief and hence denies the same."

As pointed out in *Estate of Beyer, ante,* p. 23, 200 N. W. 772, the technical rules of pleadings do not apply to proceedings in county court instituted upon claims against the estates of deceased persons. Under County Court Rule

XIV the answer of the administratrix constitutes an objection and sufficiently put in issue the allegations of the claim to require the claimant to sustain the same by sufficient competent evidence.

As we view it, the vital question in the case is not so much whether the instrument delivered by Patrick Carlin to his daughter, under all the circumstances, created the relation of principal and agent, trustee or *cestui que trust,* depositor and depositary, as it is to discover when, if ever, prior to the death of Patrick Carlin, the money became due. Giving names to legal relationships is quite as apt to be misleading and confusing as it is helpful and clarifying. In order to more fully present the case, some of the surrounding facts and circumstances may be briefly referred to. *Jennie Carlin Evans* was the daughter of the deceased, Patrick Carlin, by his first wife, and in 1900 lived in the city of Chicago, where at the same time her sister, Mary Smith, also resided. There were four living children by the first marriage. The first wife having died August 15, 1869, the father married *Winnie Carlin* in 1870. She is the executrix of the will of Patrick Carlin. Of the second marriage there were six living children. In 1900 the father was in Chicago visiting his daughters, went with the daughter Mary to the home of the claimant, and the father made some inquiry of the daughters as to whether or not they had money to loan, advised them against depositing the same in banks, and suggested that he could secure good loans at not less than seven per cent. and that sometimes he was able to secure ten per cent.; that at that time the claimant turned over to the father the $4,000 in question and received from him the writing upon which the claim of plaintiff is principally based. It also appears that the claimant came to Wisconsin in 1903 and remained for seven or eight years, part of the time at Montfort and part of the time at Boscobel, leaving Wisconsin to return to Chicago about 1911. It appears also that the father visited in Chicago several times between 1900

and 1916, but the dates are not fixed with certainty.  The
father originally lived in Crawford county, but moved to
the city of Boscobel in Grant county some time after 1901.
It appears that the relation between the father and his daugh-
ters was always friendly.  It does not appear that the claim-
ant or any one else ever disclosed to *Winnie Carlin,* the
second wife of Patrick Carlin, the fact that he had received
$4,000 from the claimant, nor was such fact known to the
children of the second marriage until the filing of the claim
of *Jennie Carlin Evans* against the estate of the deceased.
It was also shown that under date of March 11, 1900, Pat-
rick Carlin had procured the execution of a mortgage by
Carrie May to *Jennie Carlin Evans* to secure the sum of
$110; likewise a mortgage executed by Maggie Davis to
*Jennie Carlin Evans,* under date of April 15, 1902, for
$100; likewise a mortgage executed by William Lorimer to
*Jennie Carlin Evans,* dated November 18, 1902, to secure
the payment of $800; likewise a mortgage by George A.
Patterson to *Jennie Carlin Evans,* dated May 22, 1901, to
secure the sum of $1,000; likewise a mortgage by Sarah
Bush to *Jennie Carlin Evans,* dated April 14, 1900, to secure
the sum of $1,200.  It also appears that at his request the
claimant, on June 7, 1901, executed to Patrick Carlin a gen-
eral power of attorney, and that the mortgages above re-
ferred to were satisfied by Patrick Carlin as attorney in
fact for *Jennie Evans.*

The claimant offered to show by oral testimony that no
part of the sum transferred to her father on March 16,
1900, had ever been repaid.  This testimony was objected
to on the ground that it involved transactions with a de-
ceased person and the objection was sustained.  It also ap-
pears that the daughter, Mary Smith, returned to Wisconsin
and lived on the farm of her father in Crawford county
from 1908 to 1912.  There was evidence as to the details
of some of the loans, particularly that made to William
Lorimer, from which it appears that the entire transaction

was had with Mr. Carlin or his attorney. There was also the testimony of other witnesses as to statements made by Patrick Carlin that he had the money of his daughter to be loaned.

It is the contention of the claimant that the undisputed evidence establishes a technical and continuing trust cognizable only in equity, which continued to the death of the deceased; that the statutes of limitation do not apply to a continuing and subsisting trust, and that in any event the statute does not begin to run until demand for an accounting and refusal to turn over the trust property where no time is limited in the trust agreement for its duration. On the other hand, the executrix claims that the instrument dated March 16, 1900, is a mere receipt for $4,000 to be loaned by Patrick Carlin for his daughter; that the contract was completed when Carlin loaned the money on notes and mortgages running to *Jennie Carlin Evans;* that the transaction was an ordinary agency and not a trust; and that whether an agency or a trust, the right of action is barred by the statute, because if a trust it is not an expressed, technical, continuing one, cognizable only in a court of equity, and that if the instrument obligated Carlin personally, it created a liability that was payable on demand and the cause accrued at once, a demand not being necessary to set the statute in operation.

The undisputed evidence shows that the father was the moving party in this transaction. It was at his suggestion, in fact at his request, that the money of the claimant was turned over to him. He distrusted banks, and it appears from the testimony that the money which was turned over to him was secreted by his daughter in her house under a rug. The relationship of the parties cannot be entirely ignored. The writing was inartificially drawn, inasmuch as the instrument does not purport to be a full and complete memorandum of the transaction. It does not state where or how the money was to be loaned or when or under what

circumstances it was to be accounted for, nor does it attempt to describe or state the relationship of the parties. It also appears that Patrick Carlin repeatedly stated that he had money belonging to the claimant in his hands. It appears that in November, 1916, the father and the two sisters were in the home of Mrs. Smith in Chicago and that *Mrs. Evans* then spoke to her father about having the money returned in order that she might pay off a mortgage upon her property, but the father stated that he was unable to get it at that time but if she needed it to let him know. There is no evidence that demand was ever made for payment of the amount. Whatever the relationship between the parties was, it was certainly something more than a mere agency. When the money was loaned, the securities received for it were not delivered to the claimant, no accounting was made to her, and the phrase in the inartificially drawn agreement, that the interest was to stand and to be repaid with the principal, indicates that the relation was to continue over an indefinite period of time. Ordinarily, money loaned on farm mortgages bears interest, payable semi-annually or annually. It was apparently contemplated that the father should retain this money, invest and reinvest the principal, adding to it the interest, and in the end was to account to the claimant for the amount received by him with interest at not less than seven per cent. Nothing was said as to the length of time the loans that the father should make should run. In the absence of an agreement to that effect, he no doubt had authority to make the loans for a reasonable time. It is quite probable that five years, or even a period somewhat longer, would not be considered unreasonable under such circumstances. There is nothing to indicate that he was to deliver the securities or that he ever did deliver any securities. When funds loaned by the father came back into his hands they were then under and subject to the terms of the contract. He was not a mere depositary. He had a duty to perform under the arrangement with his daughter. Taking all of the facts and circumstances into

consideration with the terms of the agreement, it is considered that the arrangement created a relationship in the nature of a continuing trust terminable at the will of either party. There is no evidence that it was ever terminated by either party prior to its termination by the death of the deceased.

*Ott v. Hood,* 152 Wis. 97, 139 N. W. 762, and *Barry v. Minahan,* 127 Wis. 570, 107 N. W. 488, are cited in support of the proposition that a demand is not necessary to perfect a cause of action for money received or loaned, payable upon demand, and that a cause of action under such circumstances accrues at the time of the transaction. That is quite true in the absence of special agreement. Here, however, the interest was to stand and to be repaid with the principal at some indefinite future time, which fact, in the light of the surrounding circumstances, indicates that neither the principal nor the interest was to be presently payable. Under such circumstances a demand is necessary to perfect a cause of action. *Payne v. Gardiner,* 29 N. Y. 146; *Boughton v. Flint,* 74 N. Y. 476; *Washburn L. Co. v. Sanborn,* 150 Wis. 562, 137 N. W. 782; *Gutch v. Fosdick,* 48 N. J. Eq. 353, 22 Atl. 590; *Campbell v. Whoriskey,* 170 Mass. 63, 48 N. E. 1070.

No demand having been made, no cause of action accrued until the death of the father. The plaintiff is entitled to an accounting on the principles of law applicable to a trustee and *cestui que trust* and to judgment for the amount found due upon the accounting. No interest upon interest should be allowed, as it appears that by the agreement the interest received should stand until the principal should be repaid. It was no doubt the intention of the parties that such advantage as the father might derive from that circumstance was in the nature of compensation for services rendered.

*By the Court.*—Judgment is reversed, and cause remanded for further proceedings as indicated in this opinion.

ESCHWEILER, J., dissents.