FARMERS & MERCHANTS BANK OF HANNA ET AL. *v.* DUKE ET AL.

[No. 16,917. Filed October 20, 1942. Rehearing denied December 2, 1942. Transfer denied January 11, 1943.]

*Ben C. Rees* and *Alfred J. Link,* both of LaPorte, and *George W. Douglas,* of Valparaiso, for appellants.

*Byron E. Guse,* of LaPorte, and *Walter M. Crisman,* of Valparaiso, for appellees.

FLANAGAN, C. J.—In the year 1920, Daniel Duke, father of appellees, left for safekeeping with the Farmers and Merchants Bank of Hanna, Indiana, one

of the appellants herein, Fourth Liberty Loan bonds of the face value of $1,400, with no express agreement as to payment for their keep or how or where they were to be kept. Hanna was an unincorporated town about twenty miles from LaPorte, the county seat, and was without police protection. The Hanna bank had two employees, a cashier and a young lady clerk, and was equipped with a small vault and safe.

In 1923, the Hanna bank had in its possession for safekeeping Liberty bonds of its customers, including those of Daniel Duke, of the face value of $16,000. During this period bank robberies were occurring in the country, and for greater safety the Hanna bank transferred these bonds, together with a part of its own securities, to the Peoples Trust and Savings Bank at LaPorte for safekeeping. The Peoples Trust and Savings Bank had been the depository of the Hanna bank for a number of years. It was located in the business district of LaPorte, had seven employees, large burglar-proof vaults and safes, and police protection. The bonds of Daniel Duke were so transferred without his knowledge, authorization or consent. However, he learned of the transfer thereafter and neither expressly objected nor consented.

In November of 1926, the Peoples Trust and Savings Bank was entered in the daytime by a gang of robbers who compelled the employees of the bank at the point of a gun to open the vaults and safes, and the robbers took cash and securities, including the bonds of Daniel Duke, of the value of approximately $180,000.

At the time the bonds were transferred from the Hanna bank, its officers believed the securities deposited with the LaPorte bank would be protected against robbery by insurance carried by the LaPorte bank. However after the robbery it was learned that

the insurance carried by the LaPorte bank did not cover the bonds of Daniel Duke. The LaPorte bank paid the interest on the stolen bonds until 1930 when it went out of business.

Daniel Duke died in 1930, and appellees are his heirs and the assignees of any interest in the bonds or claim growing out of their deposit as above described.

In October, 1931, the Hanna bank went out of business and appellant George H. Denison, Trustee, was appointed trustee to liquidate its assets.

This action was brought by appellees against appellants. The complaint alleges the deposit of the bonds with the Hanna bank, a demand for their return or payment of their value, a promise by the cashier of that bank that the value of the bonds would be paid in full, and a subsequent demand which was refused with a denial of liability.

Appellants filed a motion to make more specific, which was overruled, and then filed an answer in four paragraphs. The first paragraph was a general denial; the second paragraph pleaded the statute of limitations; the third paragraph alleged the facts relating to the deposit of the bonds and facts which appellants insist show that they had exercised due care for their safekeeping and that they were stolen without negligence on appellants' part; the fourth paragraph stated that any agreements alleged to have been made by the officers of the Hanna bank or the trustee for the return of the bonds or payment of their value, was without consideration. Appellees filed a reply of general denial to the three affirmative paragraphs of answer.

Trial to jury resulted in a verdict in favor of appellees in the sum of $1,400. Judgment was duly rendered on the verdict.

Errors properly assigned here are: (1) The court

erred in overruling appellants' motion to make the complaint more specific; and (2) the court erred in overruling appellants' motion for a new trial.

Specifications of the motion for a new trial are: (1) The court erred in overruling appellants' motion for a directed verdict at the close of plaintiffs' evidence and again at the close of all the evidence; (2) error in giving and refusing of certain instructions; (3) excessive damages or error in the assessment of the amount of recovery; (4) error in overruling the motion of appellants for judgment on the answers to the interrogatories; (5) the verdict is contrary to law; and (6) the verdict is not sustained by sufficient evidence.

Appellants state that the judgment should be reversed for three reasons:

1. The cause of action of the appellees, if any, was barred by the statute of limitations.

2. The evidence does not show any facts constituting negligence on the part of the appellants which resulted in the loss of appellees' bonds.

3. There was no evidence of the value of the bonds.

These three points summarize appellants' propositions under their assignments of error.

By their motion to make more specific, by their motion for a directed verdict, and by their tender of certain instructions which were refused, appellants raised the question as to whether appellees' cause of action was barred by the statute of limitations.

Appellants insist that the evidence shows that no demand is shown prior to 1938 and we agree with their contention. But the evidence does show a demand in 1938. Appellants say that this shows an unreasonable delay in making the demand, that appellees knew that the bonds were stolen in 1926 and should have made

demand within the period of the six-year statute of limitations. § 2-601, Burns' 1933, § 60, Baldwin's 1934.

However this action is based upon a breach of the contract by failing to redeliver upon demand. There was no breach until there was a demand by appellees or repudiation by appellants. The mere fact that the bonds were stolen did not constitute such a breach. They might have been recovered or substitution made before demand. The contract was a continuing one and the statute of limitations did not begin to run until it was breached. *Toni* v. *Kingan & Co.* (1938), 214 Ind. 611, 15 N. E. (2d) 80; *McCabe* v. *Grantham* (1941), 108 Ind. App. 695, 31 N. E. (2d) 658; *Bowes* v. *Cannon* (1911), 50 Colo. 262, 116 P. 336.

Under several of the specifications in their motion for a new trial appellants present the question as to the sufficiency of the evidence to show that the loss of the bonds was due to negligence on their part.

Appellees alleged in their complaint and proved on trial that redelivery of their bonds on demand was refused. It was then incumbent upon appellants to allege and prove that the failure to so redeliver was due to the fact that they were stolen without fault on the part of appellants. This they did allege and the burden was upon them to prove the allegations of their answer by a fair preponderance of the evidence. See 6 Am. Jur., Bailments, § 369, p. 447.

The evidence which is not controverted shows that the Hanna bank was located in an unincorporated town which had no police officers.

The Hanna bank had a vault made of concrete with an inside wall four inches thick and an outside wall ten inches thick, a double steel door and a safe inside. The safe had a time lock but the vault did not. LaPorte

was the closest large city and was seventeen miles away. The Peoples Trust and Savings Bank in LaPorte had a double vault constructed of concrete fifteen inches thick with iron bars on three-inch centers going through the concrete. It was lined with an inch and a half of steel in three plates. The outside door on the vault weighed two tons and there were two inside doors weighing five hundred pounds each which had a combination lock. At the back of the vault was a safe in which appellees' bonds were kept. The upper and lower compartments of the safe had two-inch doors with combination locks and the middle door was a rotary door probably six inches thick. There were time locks on the vault and the safe but these were not on in the daytime because of the necessity of gaining access for business. The cashier of the bank at the time of the robbery was compelled at the point of a gun to unlock the vault and the safe and the robbers took all the securities there located. To this LaPorte bank the Hanna bank took its customers' bonds for safekeeping.

There was no agreement as to where appellees' bonds were to be kept and the mere transfer of them to the LaPorte bank did not in itself constitute any breach of contract. Nor are we able to see wherein such transfer was a violation of its duty to use due care in safeguarding them. It is apparent that the safe of the LaPorte bank was a safer place for them than was the safe of the Hanna bank. We think appellants discharged their duty to prove that the bonds were stolen without any fault on their part and there was no evidence to the contrary.

Other questions presented are not likely to arise on a retrial and do not require our consideration.

Judgment reversed with instructions to sustain appel-

lants' motion for a new trial and for further proceedings consistent with this opinion.

Curtis, J., dissenting.

NOTE.—Reported in 44 N. E. (2d) 172.