May MONTGOMERY, Appellant,

v.

POLK COUNTY, Iowa, Appellee.

No. 62298.

Supreme Court of Iowa.

May 30, 1979.

Michael J. Cunningham of Bertroche & Hagen, Des Moines, and Robert J. Bothe of Garvey, Nye, Crawford, Kirchner & Moylan, Omaha, Neb., for appellant.

Dan L. Johnston, Polk County Atty., and Thomas P. Lenihan, Asst. Polk County Atty., for appellee.

UHLENHOPP, Justice.

The decisive issue in this appeal is whether the discovery rule applies to cases under our Municipal Tort Claims Act, chapter 613A, The Code 1977. *See Chrischilles v. Griswold*, 260 Iowa 453, 150 N.W.2d 94 (1967).

I. Although defendant Polk County, Iowa, presses other evidence to our attention, the following may be taken as established for purposes of the appeal. On November 11, 1976, officers arrested Linda Brewer on a charge of possession of a controlled substance with intent to deliver, and cash bail was set at $2000. Plaintiff May Montgomery, Brewer's friend from Omaha, Nebraska, posted the bail, took a receipt from the police, and obtained Brewer's release. The next day personnel of the clerk of court issued a receipt to *Brewer* for $2000.

At some point the district court sustained a motion to suppress evidence in the criminal case against Brewer.

On December 16, 1976, in writing, Brewer assigned the cash bail to Attorney Robert A. Wright. On January 17, 1977, the assignment was filed with the clerk.

On January 18, 1977, on the recommendation of the prosecutor, the district court dismissed the criminal charge against Brewer. On the same day the clerk paid the cash bail of $2000 to Mr. Wright.

According to her testimony, Montgomery came to Des Moines in May 1977 and for the first time learned that the charge against Brewer had been dismissed and the cash bail had been paid to Mr. Wright. She conferred with the county attorney, who suggested that she consult private counsel.

On September 29, 1977, Montgomery commenced the instant action to recover $2000 and interest from Polk County and the City of Des Moines, Iowa. She later dismissed the case as against the City.

After trial the court held for the county on the ground that Montgomery sued too late, citing section 613A.5. The court certified the case for appeal, Iowa R.App.P. 3, and Montgomery appealed.

II. The way Montgomery presented her claim is important to the analysis of the case. She did not proceed against the *clerk for failure to pay over on demand*. Instead she proceeded under the Municipal Tort Claims Act against the *public body for the clerk's negligence in paying the money to the wrong person on January 18, 1977*. The appropriate decisions therefore are those dealing with the Municipal Tort Claims Act.

Under section 613A.1(1) of our Municipal Tort Claims Act, "municipality" includes a county. Section 613A.5 of the act provides:

Every person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 or section 613A.8 [imposing tort liability and duty to defend] or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state time or place or circumstances or the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice.

Montgomery did not sue within six months after the clerk "negligently" paid Wright, nor did she give notice within sixty days after the clerk paid Wright so as to extend the time to sue to two years. She was not incapacitated by injury so as to extend the sixty days to give notice.

III. Montgomery therefore faces the limitation in section 613A.5. We need not speculate about the various avenues she might have taken, endeavoring to avoid that section. She selected her own route and set it out in her brief. She proceeds as follows: (1) the county was negligent in paying the money to the wrong person, (2) this breach of the duty of care occurred on January 18, 1977, when the county paid Mr. Wright, (3) Montgomery did not *discover* the breach until May 1977, and (4) her cause of action against the county did not *accrue* until the discovery, citing *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94 (1967). She states in her brief:

> When the Defendant released and paid over the Plaintiff's money to another person, notwithstanding the fact that the Defendant had given Plaintiff a receipt acknowledging receiving the money from Plaintiff, the Defendant fell short in its duty of care to Plaintiff *and she was damaged.* (Emphasis added.)

She then spells out her reliance on *Chrischilles* in this language:

> After she became aware that the Defendant had erroneously paid the money over to another person, the Plaintiff was then faced with an election: whether to affirm the contract which Plaintiff and Defendant entered into when she deposited the bail money, thereby waiving the tort, and proceed in an action ex contractu; or, abandon the contract and proceed in an action ex delicto. Electing to proceed ex delicto, the question becomes: when did Plaintiff's cause of action *accrue*?
>
> The contract which gives rise to this lawsuit was executed on November 11, 1976, when the Plaintiff posted the Two Thousand Dollars ($2,000.00) cash bond and received a receipt acknowledging the money from the Defendant. Plaintiff did not become aware of Defendant's negligence until on or about May 1, 1977, and this is the date on which Plaintiff's cause of action *accrued.* "The general rule is that a cause of action accrues when the aggrieved party has a right to institute and maintain a suit." *Chrischilles v.*

*Griswold,* 260 Iowa 453, 150 N.W.2d 94, 99 (1967). Plaintiff did not become aware of Defendant's negligent performance and the consequent injury to her interest until on or about May 1, 1977. This is the first time Plaintiff was aware that the money she had deposited with the Defendant had been paid to someone else. This is the first time Plaintiff was aware that she had received an injury to her interest. This is the first time she could have pursued an action to a successful result.

> It is true that Plaintiff's injury is traceable to a negligent act of Defendant on or about January 19, 1977. However, Plaintiff was unaware of any injury to her interest until May 1, 1977, and it was not until this date that her cause of action *accrued.* "If an injured party is wholly unaware of the nature of his injury and the cause of it, it is difficult to see how he may be charged with a lack of diligence or sleeping on his rights." *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94, 100 (1967). (Emphasis added.)

She continues in her brief:

> As summarized in *Chrischilles v. Griswold, id.* the recent trend has been toward "the discovery rule." This rule simply stated is that a statute does not commence to run until the date of discovery, or the date when, by the exercise of reasonable care, Plaintiff should have discovered the wrongful act. "The question in any given case is not, what did Plaintiff know of the injury done him? but, what might he have known, by the use of the means of information within his reach, with the vigilance which the law requires of him? *We now believe the better rule to be that a cause of action based on negligence does not accrue until Plaintiff has in fact discovered that he has suffered injury or by exercise of reasonable diligence should have discovered it and are persuaded the rationale of the discovery doctrine should be adopted."* *Chrischilles v. Griswold, id.,* [150 N.W.2d] 100 (emphasis added). Applying the discovery rule to the facts of this case,

Plaintiff discovered that she suffered an injury, that the Defendant had breached its duty of care to her and her money would not be returned to her on or about May 1, 1977. This is the date that the Statute of Limitations given by Code of Iowa § 613A.5 began to run, thereby making Plaintiff's Petition timely filed, and not barred as held by the Trial Court.

These arguments in Montgomery's brief are in line with paragraphs four and five of the negligence count of her petition:

4. That as a result of the receipt of the cash bond by the Defendants, the Defendants owed a duty of care to the Plaintiff to see that said cash bond was returned to the Plaintiff once the conditions of bail were met by one Linda Brewer.

5. That Defendants breached that duty of care owed to the Plaintiff when on or about January 18, 1977, said cash bond was negligently released to someone other than the Plaintiff.

The county's brief contains the same understanding of the claim Montgomery makes—that the "cause of action did not *accrue* until plaintiff 'discovered' her injury on May 5, 1977." (Emphasis added.)

IV. Thus Montgomery posits that the county breached its duty "when on or about January 18, 1977, said cash bond was negligently released to someone other than the Plaintiff." Legally, she could have sued then. She places her reliance on the contention that her cause of action did not "accrue" until her later *discovery.* She thus squarely presents the question of whether the *Chrischilles* discovery rule applies under section 613A.5.

*Chrischilles* itself was a private party, common-law negligence action to which the general statute of limitations applied. That statute starts time running when causes of action "accrue." § 614.1, The Code. Section 613A.5, however, does not use that term. Nor does it use a similar term such as "arise." Such terms give limitations statutes some elasticity as demonstrated by the cases we will consider, for a body of court-made law exists, including the dis-

covery rule itself, as to when a cause of action "accrues" or "arises." 51 *Am.Jur.2d Limitation of Actions* §§ 107–37 (1970); 54 *C.J.S. Limitations of Actions* §§ 108–98 (1948). Section 613A.5, however, provides that a person who claims damages for wrongful death, loss, or injury "shall commence an action *therefor* within six months" unless the sixty-day notice is given. (Emphasis added.) The sixty days for notice also runs "after the alleged wrongful death, loss or injury." Did the legislature intend by section 613A.5 that actions must be brought within the time therein stated, or did it intend, as Montgomery claims, that time runs from later discovery?

A. We have the duty to construe section 613A.5 in accordance with what we deem to be the intent of the Iowa General Assembly in enacting it. Accordingly we have consistently stated that a claimant must comply with section 613A.5 as part of a statute of creation; the legislature could open the door to the extent it chose to do so. Dealing with contribution and indemnity, we drew several conclusions as to legislative intent in the case of *Boyle v. Burt,* 179 N.W.2d 513, 517 (Iowa 1970). The fifth conclusion, with respect to section 613A.5 notices, was that the legislature intended to allow "specified time variances for the giving of claim notices *only* with regard to incapacity or death due to injury, not here applicable." (Emphasis added.)

Dealing with the extension of time for incapacity, we stated in *Sprung v. Rasmussen,* 180 N.W.2d 430, 433 (Iowa 1970):

Chapter 613A created a new right of action—one that was not available at common law nor available elsewhere by statutory authority, and therefore, while cases interpreting other limitation statutes are helpful, they do not control here. Truly chapter 613A, and particularly the section which we are interpreting here, section 613A.5, might be called a statute of creation, rather than a statute of limitation. The statute creates a new liability and provides for methods of enforcing the same, and by its terms fixes the time within which action for recovery may be

commenced. It being a statute of creation, *the commencement of the action within the time the statute fixes is an indispensable condition of the liability and of the action permitted.* The time element is an inherent element of the right so created, and the limitation of the remedy is likewise a limitation of the right. (Emphasis added.)

Dealing with the proper manner of raising the notice issue and quoting from *Boyle,* we stated in *Bennett v. Ida County,* 203 N.W.2d 228, 236 (Iowa 1972): *"A lapse of a statutory period operates, therefore to extinguish the right altogether."* (Emphasis in *Boyle.*)

Dealing with malpractice, we adverted to the discovery rule and stated in *Flynn v. Lucas County Memorial Hospital,* 203 N.W.2d 613, 616 (Iowa 1973):

The discovery rule is that a cause of action based upon negligence does not accrue until plaintiff has in fact discovered his injury or by exercise of reasonable diligence should have discovered it. *Chrischilles v. Griswold,* 260 Iowa 453, 463, 150 N.W.2d 94, 100 (1967); Prosser, *Law of Torts* § 30 at 144 (Fourth Ed. 1971).

It had its genesis in the theory a statute of limitations should not defeat the remedy of one who has not slept on his rights but has simply been excusably unaware of his cause of action. *Flanagan v. Mount Eden General Hospital,* 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969), and citations. However, unlike a true statute of limitations, the notice requirements of § 613A.5 are considered a legislative restriction of the right rather than the remedy. Rules affecting ordinary statutes of limitations do not necessarily apply. *Sprung v. Rasmussen,* 180 N.W.2d 430 (Iowa 1970). *Compare Schaefer v. Mayor and Council of Athens,* 120 Ga.App. 301, 170 S.E.2d 339 (1969), with *Boulder City v. Miles,* 85 Nev. 46, 449 P.2d 1003 (1969).

Dealing with constitutionality of the statute, we stated in *Shearer v. Perry Community School District,* 236 N.W.2d 688, 692 (Iowa 1975):

In the light of our interpretation of § 613A.5 we are unable to agree with plaintiffs that said section arbitrarily and capriciously infringes upon or cuts off vested rights in violation of constitutional guarantees. Instead, *we conclude the right of action provided by chapter 613A is co-extensive with, and no broader than, the notice requirement of § 613A.5.* In other words, it might be said compliance with the notice requirement is a condition precedent to the maintenance of an action for compensation for torts committed by governmental subdivisions. *See* 1 *Am.Jur.2d Actions* § 81, p. 610. (Emphasis added.)

Dealing with the sixty-day notice, we stated in *Lattimer v. Frese,* 246 N.W.2d 255, 257 (Iowa 1976): "The statute mandates the notice and the clear tenor of our decisions is that proof of timely giving of the notice is part of a claimant's case."

Dealing with the constitutionality of the limitation on the extension of time for an incapacitated person, we stated in *Harryman v. Hayles,* 257 N.W.2d 631, 636 (Iowa 1977):

We have not overlooked the fact that § 613A.5 is a statute of creation rather than a statute of limitation. In such cases, the general rule is that the legislature may attach its own conditions to an exercise of the rights granted. *Bennett v. Ida County,* 203 N.W.2d at 235–236; *Sprung v. Rasmussen,* 180 N.W.2d at 433. Our conclusion here does not violate that principle, which surely cannot be extended to include authority to impose unconstitutional conditions on the exercise of the rights granted. *See American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, 730 (1974).

These pronouncements are in line with the summary pertaining to statutes of creation found in 51 *Am.Jur.2d Limitation of Actions* § 15, at 599–600 (1970):

Statutes of limitation are to be distinguished from statutes which create a right of action not existing at common law and restrict the time within which

action may be brought to enforce the right. Although the general rule is that a true statute of limitations extinguishes only the right to enforce the remedy and not the substantive right itself, the limitation of time for commencing an action under a statute creating a new right enters into and becomes a part of the right of action itself and is a limitation not only of the remedy but of the right also; the right to recovery depends upon the commencement of the action within the time limit set by the statute, and if that period of time is allowed to elapse without the institution of the action, the right of action is gone forever. The statute is an offer of an action on condition that it be commenced within the specified time, and if the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist and the defendant is exempt from liability.

See also 57 Am.Jur.2d Municipal, School & State Tort Liability § 60, at 69 (1970); Petz, Survey of Iowa Law—Some Tort-Related Statutes, 23 Drake L.Rev. 603, 616 (1974).

B. The present case is to be distinguished from those in which negligence occurred at one time but the injury, the breach, did not occur until later. Montgomery does not claim that the injury did not occur when the clerk paid the money to Mr. Wright; on the contrary, she founds her case on negligence and claims January 18 is when the breach occurred. Rather, she claims her cause of action did not "accrue" until later discovery, notwithstanding that section 613A.5 does not start time running from the time causes of action "accrue." Thus the cases are inapplicable in which negligence occurred at one time—such as failure to label a bottle—but the injury occurred later, as when the contents of the bottle were consumed. Cf. Palsgraf v. Long Island Railroad, 248 N.Y. 339, 341, 162 N.E. 99, 99 (1928) (Cardozo, C. J., " 'Proof of negligence in the air, so to speak, will not do.' Pollock, Torts (11th Ed.), p. 455."). In such cases discovery of the injury does not occur later; the injury occurs later.

An illustration from the municipal tort field is Boulder City v. Miles, 85 Nev. 46, 49, 449 P.2d 1003, 1005 (1969). There a city bought and graded a tract of land and formed a subdivision, but negligently failed to compact the soil properly. The plaintiffs bought a lot and built a house on it. Later the soil subsided as a result of the city's earlier inadequate compacting, damaging the plaintiffs' house. The court held that the plaintiffs could sue "when the forces wrongfully put in motion produce an injury." Hence time ran from the point at which the soil subsided. See also Turner v. Staggs, 89 Nev. 230, 510 P.2d 879, cert. denied, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973). Such is not Montgomery's case. On her theory of negligent payment to the wrong person, she was hurt when that event occurred. The negligence and the injury were simultaneous.

By way of analogy, section 613A.5 covers "wrongful death" as well. If next-of-kin do not learn of a decedent's death until several months later, the "death" would not have occurred at that later time; it occurred when the decedent died. Similarly in this case involving a tort claim for negligently paying money to the wrong person, the "injury" occurred when the payment was made. The use of the word "injury" in the last sentence of section 613A.5 also shows it has its ordinary signification: "during which the person injured is incapacitated by his injury from giving such notice." Montgomery does not claim otherwise. She claims that notwithstanding, her "cause of action accrued" on later discovery, although section 613A.5 is not couched in terms of accrual of causes of action. We thus return to the question of the applicability of the discovery rule to a limitations statute which speaks in terms of any "wrongful death, loss or injury."

C. Some jurisdictions have ameliorative language or provisions in their tort-claims limitations statutes. Thus tort claims against the federal government are barred after two years from the time the claim "accrues." 28 U.S.C. § 2401(b) (1977) (with

another provision not relevant here). This terminology has enabled the federal courts to hold that malpractice claims do not accrue until "the claimant [has] discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice." *Quinton v. United States*, 304 F.2d 234, 240 (5th Cir. 1962). *See also Kubrick v. United States*, 581 F.2d 1092 (3d Cir. 1978); *Toal v. United States*, 438 F.2d 222 (2d Cir. 1971). These decisions are in line with the discovery rule on the time malpractice actions accrue under general statutes of limitations. 61 *Am. Jur.2d Physicians, Surgeons & Other Healers* § 183 (1972); *cf.* 70 *C.J.S. Physicians & Surgeons* § 60, at 985 (1951) (foreign objects rule).

New Jersey employs both the term "accrual" and an extension clause. *Bell v. County of Camden*, 147 N.J.Super. 139, 141, 370 A.2d 886, 887–88 (1977) (per curiam) (statute provides: "'[A] claim . . . shall be presented . . . not later than the ninetieth day after accrual of the cause of action,'" but "'[a] claimant who fails to file notice of his claim within 90 days . . . may, in the discretion of a judge . . ., be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially prejudiced thereby.'"). Under this legislation, the New Jersey Superior Court exercised its discretion to permit a patient to file her claim for malpractice within one year after she discovered the injury, although more than a year from the time the injury occurred. *Torres v. Jersey City Medical Center*, 140 N.J.Super. 323, 326, 356 A.2d 75, 77 (1976). The court stated:

> Although our courts have not had occasion to determine when a medical malpractice claim accrues within the meaning of the Tort Claims Act, the meaning of *accrual* [emphasis in original] within the context of the Statute of Limitations (N.J.S.A. 2A:14–2) is well established. *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563 (1973); *Fernandi v. Strully*, 35 N.J. 434, 173 A.2d 277 (1961). *The use of this term by the Legislature in the light of the*

> *judicial application of the discovery rule to the same term used in the Statute of Limitations is significant. By the use of this term the Legislature intended that it should have the same meaning and be applied in the same fashion as in the Statute of Limitations.* Comment to 59:8–1, *Report of the Attorney General's Task Force on Sovereign Immunity*, 230 (1972). (Emphasis added.)

In *Bell* the New Jersey Appellate Division held that a court is powerless to extend the time after the lapse of the year from the time a cause of action does accrue.

*See also Beary v. City of Rye*, 44 N.Y.2d 398, 406 N.Y.S.2d 9, 377 N.E.2d 453 (1978) (statutory grounds for extending time).

With regard to the discovery rule, Idaho appears to have gone the farthest; it has embodied that rule itself into its state tort claims statute. The Idaho Supreme Court quoted the statute in *Newlan v. State*, 96 Idaho 711, 713, 535 P.2d 1348, 1350, *appeal dismissed*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975): "'Filing claims against state—Time.—All claims against the state arising under the provisions of this act shall be presented to and filed with the secretary of state within one hundred twenty (120) days from the date the claim arose or reasonably should have been discovered, whichever is later.'" In that case the parents were aware of their son's fatal accident but they were unaware that they had a case until they consulted an attorney. The court held the latter fact did not extend the time under the discovery rule. The court later held that additional injuries discovered after an incident do not invoke the discovery rule. *Ralphs v. City of Spirit Lake*, 98 Idaho 225, 228, 560 P.2d 1315, 1318 (1977). *Cf. Schaefer v. Mayor & Council of City of Athens*, 120 Ga.App. 301, 170 S.E.2d 339 (1969).

■ D. Under our decisions section 613A.5 is part of a statute of creation. Time to sue or to give the sixty-day notice runs from the wrongful death, loss, or injury unless the sixty-day notice is timely given, and then from the notice. When the

legislature abolished sovereign immunity in the municipal tort claims field, numerous statutes existed throughout the country, some of them containing ameliorative clauses of the kind we have illustrated. The legislature saw fit to include an exception in section 613A.5 for the person who is incapacitated by injury from giving notice, but it did not see fit to insert other ameliorative language found in some other jurisdictions. Presumably the legislature wrote the statute as it desires the law to be; our responsibility is to apply the statute as enacted. We conclude that the trial court decided the case correctly.

AFFIRMED.

All Justices concur except McCORMICK, LARSON, JJ., REYNOLDSON, C. J., and HARRIS, J., who dissent.

McCORMICK, Justice (dissenting).

The notice of claim statute merely specifies the action must be commenced "within six months", unless the sixty-day notice is given, without expressly providing when the six month period begins. The Municipal Tort Claims Act is remedial. It is liberally construed. The notice provision is a limitation on the right. It is not favored. *Vermeer v. Sneller*, 190 N.W.2d 389, 394 (Iowa 1971); *Sprung v. Rasmussen*, 180 N.W.2d 430, 433 (Iowa 1970).

In these circumstances, I do not believe the absence of words affirmatively providing that the six month period starts when the cause of action "accrues" or "arises" forecloses application of the discovery rule. The legislature did not use words to negate its applicability. The question is simply not answered by express language in the statute. Therefore in determining legislative intent we must choose between two possible constructions of the statute. Under the principles explained in *Vermeer* and *Sprung*, we must select the construction which promotes the remedy. Doing so, we should hold the discovery rule applies.

1. 14 C.J.S. Clerks of Court § 40, at 1246. *Cf. National Auto. & Cas. Ins. Co. v. Pitchess*, 35 Cal.App.3d 62, 64–65, 110 Cal.Rptr. 649, 651

LARSON, Justice (dissenting).

I believe the majority's decision in this case results in an erroneous disposition of this appeal on two grounds. First, it considers the breach of duty by defendant, if any, to have occurred in January, 1977, rather than in May, 1977, when plaintiff demanded return of the bail money deposited with the clerk. Because the breach occurred in May and suit was commenced in September, the action was brought within six months of the breach and is therefore timely regardless of whether or not we apply the "discovery" rule. Second, I believe the discovery rule should be applied, making the action timely regardless of the date of defendant's breach of duty, so long as the section 613A.5 conditions are fulfilled within the required times after discovery of the breach, or after it should have been discovered in the exercise of reasonable diligence.

I. Nature of defendant's duty.

A clerk of district court acts as a trustee of funds deposited in his office.[1] He does not merely owe a duty to retain the funds intact, preventing negligent release of them as here claimed, but a duty to pay them out to the rightful claimant upon demand. When the demand is made, and the clerk fails to comply, the breach of duty occurs, and it has uniformly been held that this is when time-barring statutes commence to run, without any consideration of the "discovery" rule or expanded definition of "accrued." In *Washburn Land Co. v. Sanborn*, 150 Wis. 562, 137 N.W. 782 (1912), former owners of land deposited security with an attorney, in lieu of a deposit with the clerk as required by law, in order to attack the validity of a tax sale of the property. The court said that:

The check was left with Sanborn as a deposit for a specific purpose, and, until the case was finally determined, it could not be withdrawn without loss of the

(1973) (funds held by sheriff paid to wrong party).

right to defend the action. Sanborn really was in the position of trustee whose duty it was to pay the money to his former clients if they were beaten in the suit, or to McLeod if he was unsuccessful. So long as the litigation was in progress, neither of the parties could withdraw the money without jeopardizing their rights, and *it was Sanborn's duty to pay it to the party finally entitled thereto, and the statute of limitations did not begin to run until payment was demanded.* It would hardly be contended that if this deposit had been made with the clerk of the court, as the statute requires, that officer could at the close of the litigation, regardless of any statute requiring him to pay the money, refuse to pay it over because it had been on deposit for more than six years, and there is little difference between the two situations. (Emphasis added.)

*Sanborn*, 150 Wis. at 568, 137 N.W. at 785.

In *Farmers & Merchants Bank v. Duke*, 112 Ind.App. 589, 44 N.E.2d 172 (1942), an owner of bonds deposited them in a bank for safekeeping. The deposit was made in 1920. In 1926 they were stolen. Twelve years later demand was made for their return. The court held that the six-year statute of limitations would not prevent the action brought for their recovery, saying that:

> There was no breach until there was a demand by appellees or repudiation by appellants. The mere fact that the bonds were stolen did not constitute such a breach. They might have been recovered or substitution made before demand. The contract was a continuing one and the statute of limitations did not begin to run until it was breached.

*Duke*, 112 Ind.App. at 594, 44 N.E.2d at 174. The breach was held to have occurred in 1938, upon demand for the bonds' return, despite the fact they were lost in 1926 and the owner knew of it immediately.

The court's conclusion in *Duke* that a breach did not occur until demand and refusal, because the custodian might have recovered them after their loss, is in accord-

ance with the general rule. At 26A C.J.S. *Deposits in Court* § 9d(1) the rule is stated that "[w]here a fund in court is paid out to a person not entitled thereto, the court will order its restoration, as where the order was procured by fraud." Section 9(d)(2) states that "[i]n case money is improperly paid out of, or withdrawn from, court, the person rightfully entitled thereto may proceed by motion to compel its restoration. The statutes of limitation are not a bar to such a proceeding . . . ." The last statement was quoted with approval by our court in *State v. Rudolph*, 240 Iowa 726, 732, 37 N.W.2d 483, 487 (1949). In that case, property was attached, then sold. The proceeds of sale were delivered to the clerk to hold in lieu of the attached property. The clerk paid it to a party who was not entitled to it. We said that:

> The original property, after its attachment, was in the custody of the court. The money represented the attached property in a different form and was turned over by the sheriff to the clerk. That official, without authority, paid it to Richard D. Rudolph [the wrong party]. It was then in *custodia legis*.

*Rudolph*, 240 Iowa at 731, 37 N.W.2d at 486.

In quoting from a North Dakota case, this court said:

> "The power of the court over moneys in its custody continues until they are distributed pursuant to final decrees in the cases in which the moneys are paid, and if from any cause such moneys are previously withdrawn without authority of law, the court can, by summary proceedings, compel their restitution. Until a decree of distribution is made and enforced, the summary power of the court to compel restitution remains intact."

*Rudolph*, 240 Iowa at 731–32, 37 N.W.2d at 486, quoting *Agricultural Bonds & Credit Corp. v. Courtenay Farmers' Cooperative Association*, 66 N.D. 122, 131, 262 N.W. 453, 457–58 (1935).

In *National Automobile & Casualty Insurance Co. v. Pitchess*, 35 Cal.App.3d 62, 110 Cal.Rptr. 649 (1973), a sheriff held funds under garnishment and by error paid

them out to a party not entitled to them in March, 1967. Plaintiff, who was entitled to the funds, made demand upon the sheriff for their return on October 9, 1969. The court held that the sheriff breached his fiduciary duty in 1967 when he paid the funds to the wrong party, but that the suit commenced on September 10, 1970, was timely under a one-year statute of limitations. It said:

> When the sheriff received the money from Nelson & Belding on March 28, 1967, he became a trustee of that money and plaintiff was the beneficiary of that trust. [Case cited.] Although that money may have been commingled with other monies as to which the sheriff was also a trustee, it remained identifiable as a specific fund held for a specific purpose. [Cases cited.] When the sheriff paid the money involved to [the wrong party], he breached his fiduciary duty, in that he failed to safeguard the trust fund. But that breach, assuming that it may have given plaintiff a right to sue on the theory of an anticipatory breach [cases cited] did not require plaintiff to sue at that time and on that theory. A total repudiation by a trustee of his trust starts the running of the statute of limitations . . ., but a mere anticipatory breach does not. . . . *In the case at bench, the sheriff's duty to turn over the trust fund received by him from Nelson & Belding did not accrue until the 9th of October, 1969, when plaintiff, having by then recovered its judgment against Johnson, made demand for the garnisheed funds. Any time limits involved, thus, ran from that date and not from April of 1967.* (Emphasis added.)

*Pitchess,* 35 Cal.App.3d at 64–65, 110 Cal. Rptr. at 651.

In *In re Estate of Nixon,* 2 N.C.App. 422, 163 S.E.2d 274 (1968), money was ordered to be held by the clerk pending distribution to named individuals. The clerk, on his own initiative, paid the funds to the state university under their escheat statute. The defendant contended the claim was barred by a statute of limitations. The court said:

> The clerk remained liable to account for these funds to the persons entitled thereto so long as the funds remained in his possession, and no statute of limitations would apply to bar an action by the beneficiaries for whose account he held the funds until they had made demand upon him and he had refused to honor the same.

*Nixon,* 2 N.C.App. at 429, 163 S.E.2d at 279.

Based upon these authorities, I believe the payment of the bail money to the wrong party here did not fix and limit the plaintiff's right as of that time. The funds remained in the custody of the law, *Rudolph,* 240 Iowa at 731, 37 N.W.2d at 486, and theoretically could have been recovered by the county at any time. The breach of its trust duties occurred on May 1, 1977 when demand was made for the money by its owner. Suit, having been commenced on September 29, 1977, was therefore within the six-month limit of section 613A.5, The Code.

II. Application of the "discovery rule."

The time-limit provision of the Tort Claims Act, in section 613A.5, The Code, provides in part that:

> Every person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 or section 613A.8 or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged *wrongful death, loss or injury* a written notice . . . .. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. (Emphasis added.)

The "discovery rule" simply provides that a claim does not "accrue" under a statute of limitations until the claimant knew of it, or should have known of it, in the exercise of reasonable care. It was adopted by us to ameliorate the harsh results where a person

was unaware of his claim until it was too late to pursue it. *Chrischilles v. Griswold*, 260 Iowa 453, 150 N.W.2d 94 (1967) (suit against architect). We said there:

> If an injured party is wholly unaware of the nature of his injury and the cause of it, it is difficult to see how he may be charged with a lack of diligence or sleeping on his rights.

*Chrischilles*, 260 Iowa at 461, 150 N.W.2d at 100. The rule has since been applied by us in medical and legal malpractice cases. *See Baines v. Blenderman*, 223 N.W.2d 199 (Iowa 1974) and *Cameron v. Montgomery*, 225 N.W.2d 154 (Iowa 1975). It appears the rule is firmly established in our law.

Two bases are relied upon by the majority in concluding the rule is not applicable under section 613A.5, The Code: (1) The Tort Claims Act is a "statute of creation" with a built-in time limitation affecting the *right* to sue, not just the remedy; and (2) the Tort Claims Act does not refer to "accrual" of the cause of action but rather to the claimant's "wrongful death, loss or injury," and the act therefore lacks the "flexibility" of traditional statutes of limitations which have been tempered by application of the discovery rule.

We have said that our tort claims act in section 613A.5 limits the right, as well as the remedy, in a claim against the municipality. *Sprung v. Rasmussen*, 180 N.W.2d 430, 433 (Iowa 1970); *Flynn v. Lucas County Memorial Hospital*, 203 N.W.2d 613, 616 (Iowa 1973). We have never held, however, that a time bar of a statutorily created cause of action was so rigid as to permit no exceptions under any circumstances. We have said that statutes of limitations are not favored by the law in cases involving the "substantive" time bar of section 613A.5. *See, e. g., Vermeer v. Sneller*, 190 N.W.2d 389, 394 (Iowa 1971); *Sprung*, 180 N.W.2d at 433.

Other courts deciding the issue have almost uniformly held that statutorily created causes of action with built-in time limitations do have exceptions, mainly based upon the policy consideration that it is unfair to do otherwise. In the early case of *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947), for example, Judge Hand writing for the second circuit held that a claimant could bring a "late" action under a federal statute containing time limitations as conditions precedent, because he had been a prisoner of war and it was physically impossible to commence his action. Other examples of "exceptions" to condition precedent time bars are myriad. In cases under the Federal Employers' Liability Act,[2] in statutory actions to set aside a patent,[3] in statutory actions for wrongful death,[4] and civil antitrust actions under the Clayton Act,[5] various exceptions have been applied extending the time to commence actions despite the built-in time limits.

The Federal Tort Claims Act time limitation under 28 U.S.C. 2401(b) contains condition precedent language, as follows:

> (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The discovery rule has been applied under the federal act despite the fact it is regarded as a condition precedent, or time-bar provision. *See, e. g., Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974); *Quinton v. United States*, 304 F.2d 234 (5th Cir. 1962); *Casias v. United States*, 532 F.2d 1339 (10th Cir. 1976); *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975); *Ciccar-*

---

2. *See, e. g., Burnett v. New York Cent. R. R.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965).

3. *See, e. g., Exploration Co. v. United States*, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918).

4. *See, e. g., Maryland v. United States*, 165 F.2d 869, 873 (4th Cir. 1947) (substantive-remedial dichotomy is "to the say the best of it, technical and legalistic reasoning").

5. *See, e. g., Kansas City, Mo. v. Federal Pacific Electric Co.*, 310 F.2d 271 (8th Cir. 1962).

one v. United States, 486 F.2d 253 (3d Cir. 1973).

Specifically, as relevant here, a cause of action for conversion, brought under the Federal Tort Claims Act, has been held not to accrue until discovery of the conversion. *Missouri Bank South v. United States*, 423 F.Supp. 571 (D.C.Mo.1976).

The early cases establishing exceptions to the previously rigid view of statutorily created rights have been referred to as "chinks in the armor" of the inflexible rule that "substantive" time limitations bar the rights created.[6]

Most important, the United States Supreme Court has rejected the view that time limits in statutes of creation are per se less flexible than "traditional" limitation statutes merely because of their origin. In *Burnett v. New York Central Railroad*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), the Supreme Court considered a claim under the Federal Employers' Liability Act, which contained a "substantive" time limitation providing that "no action shall be maintained . . . unless commenced within three years from the day the cause of action accrued." The claimant had filed an F.E.L.A. action in state court which was dismissed for lack of proper venue. Eight days after the dismissal, he filed his action in federal court. The district court dismissed the federal action because it was not commenced within the three-year limitation, and the court of appeals affirmed, rejecting the plaintiff's claim that the F.E.L.A. limitation was tolled during the pendency of the state court action. The court of appeals said:

> [t]he limitation in the Act is more than merely procedural. It is contained in an Act which created a new right and prescribed the remedy. The remedy is a part of the right and is a matter of substance. Failure to bring the action within the time prescribed *extinguished the cause of action.* (Emphasis added.)

*Burnett v. New York Central Railroad*, 332 F.2d 529, 530 (6th Cir. 1964). The court of appeals cited several authorities in support of this view and distinguished cases which had extended the time limits of several other "substantive" federal statutes. The court concluded by saying that "[w]e find nothing in [a previous supreme court case] indicating that the Supreme Court has overruled previous cases holding that the limitation in the Act was substantive and not procedural." *Id.* at 531.

The Supreme Court on appeal reversed the court of appeals. It did not change the previous characterization of the time limit as "substantive;" it simply said the label was no longer determinative because the main issue is whether Congress intended a particular result. It said that:

> The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one "of legislative intent whether the right shall be enforceable . . . after the prescribed time." [Cases cited.] *Classification of such a provision as "substantive" rather than "procedural" does not determine whether or under what circumstances the limitation period may be extended.* As this Court has expressly held, the FELA limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years. (Emphasis added.)

*Burnett*, 380 U.S. at 426–27, 85 S.Ct. at 1053–54, 13 L.Ed.2d at 944–45.

A footnote to the above statement said:

> The distinction between substantive and procedural statutes of limitations appears to have arisen in cases involving conflicts of laws. [Authority cited.] While the embodiment of a limitation provision in the statute creating the right which it modifies might conceivably indicate a legislative intent that the right and limitation be applied together when the right is sued upon in a foreign forum, the fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled. *Thus the "substantive"—"pro-*

---

6. *Scarborough v. Atlantic Coast Line R.R.*, 178 F.2d 253, 259 (4th Cir. 1949).

cedural" distinction would seem to be of *little help in deciding questions of extending the limitation period.* (Emphasis added.)

*Id.,* 380 U.S. at 427, 85 S.Ct. at 1054, 13 L.E.d.2d at 944. *See also Glus v. Brooklin Eastern Terminal,* 359 U.S. 231, 234–35, 79 S.Ct. 760, 762–63, 3 L.Ed.2d 770, 773 (1959) (F.E.L.A. time bar extended).

The Supreme Court in *Burnett* held that extending the time under the Act, based upon the pendency of the state action, "effectuates the basic congressional purposes in enacting this humane and remedial [Federal Employers' Liability] Act as well as those policies embodied in the Act's limitation provision . . . ." *Burnett,* 380 U.S. at 427–28, 85 S.Ct. at 1054, 13 L.Ed.2d at 945.

The court in *Burnett* said that to determine legislative intent, the purposes and policies of time-barring statutes must be examined. It said that:

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . ." [Case cited.] Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights.

*Id.,* 380 U.S. 428, 85 S.Ct. at 1054, 13 L.Ed.2d at 945.

With *Burnett,* the "chink in the armor" of the substantive-procedural dichotomy became a gaping hole. Legislative intent and policy, rather than origin, are now the touchstones for determining the adaptability of the time bar to exceptions previously limited to "traditional" statutes of limitations.

Applying these principles to the case at hand, certainly no one could contend a claimant has slept on his rights if he was neither aware of them, nor capable of being aware of them in the exercise of reasonable diligence. And what would be "fair" or "just" in denying a plaintiff's claim under these circumstances merely because the defendant is a municipality?

I contend that the same policies underlying application of the discovery rule in *Chrischilles* apply equally here. The rule enunciated there should be extended to claims under the Tort Claims Act unless clear intent of the legislature appears to prevent it. I do not believe that such intent is established either by the wording of the statute or the history of our rule of sovereign immunity preceding it.

In *Olsen v. Jones,* 209 N.W.2d 64 (Iowa 1973), we faced the issue of whether timely notice under section 613A.5 was required in order to claim indemnity or contribution from a municipality. The act did not make it clear on its face. We concluded, however, that the notice requirement was intended to be operative only in an action by the injured party, not in claims for indemnity or contribution, saying that to hold otherwise "would not only thwart the intent of the statute but would also summarily abrogate the important equitable principles of contribution which were finally established—after long struggle—in *Best v. Yerkes,* 247 Iowa 800, 810, 77 N.W.2d 23, 29, 60 A.L. R.2d 1354 (1956). . . ." *Olsen,* 209 N.W.2d at 66.

The "long struggle" referred to was almost insignificant compared to the one involving sovereign immunity, as attested to by our *Boyer* case.[7] Did our legislature intend to provide a time limit under the Tort Claims Act without sufficient flexibility to accommodate a reasonable discovery rule? If so we have only modified the old concept that "the king can do no wrong" to now provide he can still do no wrong if the victim does not discover it right away.

---

7. *Boyer v. Iowa High School Athletic Ass'n,* 256 Iowa 337, 349, 127 N.W.2d 606, 613 (1964).

The short claims period provided makes application of the discovery rule even more imperative in tort claims act cases than in others with longer periods provided. In *Gates Rubber Co. v. USM Corp.*, (7th Cir.) 508 F.2d 603, 612–13, the court said:

> [The] short statute provides a stronger case for a discovery rule than a long one. For the probability of injustice resulting from the failure to discover meritorious claims unquestionably diminishes as the statutory period increases. Moreover, the risk that a defendant might be unable to refute an unfounded claim is greater when a prospective plaintiff is allowed a period of five years *after discovery* of his claim than when he must act within two years of discovery. (Emphasis in original.)

It is true that the federal statutes discussed use the word "accrue," and the Iowa Tort Claims Act does not. I disagree with the majority's conclusion, however, that this denies the "flexibility" required to apply the discovery rule to this case. The federal cases extending the time period under the Tort Claims Act, and similar acts, have balanced the policy considerations of both parties, and concluded Congress did not intend to enact a law causing unwarranted hardships on plaintiffs. In none of them has the court said the relaxation of the time bar was a result of some special meaning to be given the use of the word "accrue." This word simply means the claimant "has a right to institute and maintain a suit." *Chrischilles*, 260 Iowa at 461, 150 N.W.2d at 99. Moreover, as discussed later, the Iowa Act refers to the claimant's "injury," which has been considered to permit a broad application in determining when a "substantive" time bar may be extended.

Our cases interpreting the time limits of section 613A.5 have exhibited a desire to avoid unreasonable results and hardships and have not shown an inflexible application of its provisions. For example, *Olsen*, in holding that a party seeking contribution or indemnity against a municipality is not bound to the notice and time provisions of the Tort Claims Act, despite the lack of a statutory exception for it, said "[a]ny other result would lead to impractical and illogical consequences, which we should avoid in searching out legislative meaning." *Olsen*, 209 N.W.2d at 67.

In *Flynn* a claimant sought to apply the discovery rule to his claim under chapter 613A. That case, in concluding the plaintiff had immediate knowledge of his cause of action and was thereby precluded from relying upon the discovery rule, clearly left the door open for future consideration of whether the rule should be adopted, stating that "[w]e do not in this case find it necessary to reach the question of the applicability of the discovery rule to the notice of claim requirements of section 613A.5." *Flynn*, 203 N.W.2d at 616.

In *Baines* we discussed the applicability of the discovery rule in medical negligence cases and quoted from a Rhode Island case which said "[t]o require a man to seek a remedy before he knows of his rights, is palpably unjust." *Baines*, 223 N.W.2d at 203. *Baines* involved a common law action for negligence, rather than a claim under the Tort Claims Act, but the palpable unfairness to a claimant is no less because the alleged wrongdoer is a municipality. This is the very sort of inconsistency characterized as "unjust" and "unsupported by any valid reason" by the four-member dissent in *Boyer v. Iowa High School Athletic Association*, 256 Iowa 337, 349, 127 N.W.2d 606, 613 (1964).

Several considerations demonstrate to me that precluding application of the discovery rule here would not be compatible with the policy considerations discussed above, and therefore could not be presumed to be intended by the legislature in the absence of express language to that effect. The words used in the Act are not only compatible with application of the discovery rule, I believe they affirmatively require it. Under Iowa's Act, the time limitation commences to run upon the "wrongful death, loss or injury" of the claimant. Section 613A.5, The Code. It is significant, I believe, that words such as "act," "negligence," "occurrence" or "event" are not

used. It is also significant that the legislature used "injury" as one of the trigger words, because this word has been broadly applied, at least as flexibly as "accrue" in other "substantive" limitation statutes. It is usually held, for example, that "injury" for purposes of commencing a period for presenting a worker's compensation claim, does not occur until "discovered," i. e., actually discovered or should have been discovered in the exercise of reasonable diligence. This rule is stated at 3 Larson, Workmen's Compensation § 78.41, at 15–83 (rev.perm. ed.1976):

> The usual statute merely dates the period from the time of injury, disability, or accident, saying nothing about time of discovery of the nature of the condition. *Yet the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable* and apparent that a compensable injury has been sustained. (Emphasis added.)

Our worker's compensation law is a legislatively created right, and its time bar could also be subjected to a narrow condition-precedent analysis. It has not been, however. We have interpreted the word "injury" in the workers' compensation statute requiring notice to an employer of a potential claim to mean a *discovered* injury. *Jacques v. Farmers' Lumber & Supply Co.*, 242 Iowa 548, 47 N.W.2d 236 (1951). We said in that case that:

> Since the legislature made disease compensable under its term "injury" then clearly it must have meant the "occurrence" of this type of "injury" *was when the employee found out about the disease.* To hold otherwise would defeat the obvious legislative purpose. The employee could hardly be held under a duty to notify his employer of a disease of which he had no knowledge. It would be unreasonable to conclude that the legislature intended a construction of "occurrence of the injury"—and we substitute "occurrence of the disease"—to mean a point of origin before the employee found out about his disease. (Emphasis added.)

*Id.*, 242 Iowa at 552–53, 47 N.W.2d at 239. We also said in that case:

> [I]t would defeat the very purpose of the workmen's compensation law to first hold a disease an injury and therefore compensable and then hold the occurrence of the injury could be before the workman discovered the disease.

*Id.*, 242 Iowa at 554, 47 N.W.2d at 240.

*Jacques* was distinguished in the later case of *Mousel v. Bituminous Material & Supply Co.*, 169 N.W.2d 763, 766 (Iowa 1969) upon the basis that *Jacques* concerned use of the word "injury" in a section 85.23 (The Code 1966) notice of injury to an employer, while *Mousel* concerned use of the word in a time limitation for commencement of a proceeding for collection under section 85.26. However, the opinion did not say "injury" was erroneously defined in *Jacques*. In fact, it is interesting to note that it quoted one authority stating that "most courts with statutes dating the limitations period from the injury have found it possible to interpret the statute as running from the time a reasonable claimant should have known the compensable character of his claim." *Id.*, at 767, quoting from an earlier edition of 2 Larson, Workmen's Compensation § 78.52, at 278.

The opinion then quotes, with apparent approval, the *Chrischilles* case language adopting the discovery rule, and says that "[w]e are not persuaded on considerations just suggested the commissioner and district court should be reversed *under this record.*" (Emphasis added.) *Mousel*, 169 N.W.2d at 767. The court then discusses the evidence showing plaintiff actually knew of his condition in time to make a claim within the prescribed period. Larson in a later edition, cites *Mousel* as a case in which "the failure [to apply the discovery rule] has . . . been on the facts rather than on the law; that is the court . . . has concluded that the claimant's conduct in the light of his knowledge and all the other circumstances did not in fact meet the test

of reasonableness." 3 Larson, Workmen's Compensation § 78.41, at 15–87 (rev.perm. ed.1976).

The flexible application of "injury" under *Jacques* still stands in Iowa. In addition the United States Supreme Court quoted with approval from a California case which said that: "[t]he afflicted employee can be held to be 'injured' only when the accumulated affects of the deleterious substance manifest themselves." *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282, 1293 (1949). The court said this statement of principle "seems to us applicable in every relevant particular" to the time-bar provisions of the F.E.L.A. *Id.*

Pennsylvania has taken a similar approach with a statute providing that a personal injury suit must be brought within two years " 'from the time when the *injury* was done and not afterwards. . . .' " (Emphasis added.) In a medical malpractice context, the court held that the "injury" commencing the limitation period did not occur until discovered by the plaintiff. *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959).

The flexibility allowed by the use of the word "injury" is recognized in 100 C.J.S. *Workmen's Compensation* § 468(8), at 370–71, where the differences in words used to commence periods of limitations in compensation claims are discussed. It states there that:

> [w]here the claim is required to be made within a specified time after the "accident," the time begins to run against such claim from the date of the occurrence of the accident, and not from the time of the development, discovery, or first manifestation of the injury.

It states, however, that "injury" does permit some latitude, saying that:

> [S]ince an intent to bar compensation claims before they arise cannot fairly be imputed to the legislature, "injury" within such a provision has been construed to mean a compensable injury . . . ; and the time for the filing of the claim begins to run as of the time when the right to compensation accrues, which may

be the time the disability or incapacity occurs, or which may be the time the disability or incapacity develops, *or becomes apparent,* and not necessarily the time of the occurrence of the accident. (Emphasis added.)

The statute also refers to the claimant's "loss" as commencing the running of the limitation period. This word, also, has been interpreted to mean a *discovered* loss. *See, e. g., Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co.,* 426 F.2d 729, 739 (5th Cir. 1970) (word "loss" in notice provision of fidelity bond means date of discovery of fraud of bank director).

I do not believe we can attribute to the legislature an intent to bar a claimant before his injury is known to him by enactment of section 613A.5. In effect, a plaintiff would be out of court before he knows he is in it. This situation has been recognized by the federal courts to involve "blameless ignorance." *Urie,* 337 U.S. at 170, 69 S.Ct. at 1025, 93 L.Ed. at 1292; *Exnicious v. United States,* 563 F.2d 418, 425 (10th Cir. 1977).

We must assume the legislature's use of words such as "injury," which has been given flexible interpretation in analogous contexts, was intentional. It could have used such words as "act," "occurrence," or other more restrictive terms but chose not to. We have said that, as to the provisions of section 613A.5, "[a] rigid interpretation of this statute under circumstances presented here does nothing to meet the purposes for which it was enacted but further closes the door on unwary claimants." *Vermeer v. Sneller,* 190 N.W.2d 389, 394–95 (Iowa 1971) (issue of whether section 613A.5 notice must be given in suit against employees in absence of specific statutory provision).

In *United States v. Reid,* 251 F.2d 691 (5th Cir. 1958), the court considered the timeliness of a claim under the Federal Tort Claims Act. It applied the discovery rule, despite the "substantive" nature of the time limitation in the Act. The court said:

> At the outset, the matter should be determined as it would were we constru-

ing another similar Federal statute prescribing the time in which suit must be filed. We do not approach it with any begrudging niggardliness from a not too well concealed attachment for the vestigial strict construction of the sovereign's waiver of immunity—a concept which has been expressly repudiated almost whenever and wherever this and similar legislation has been before the Supreme Court. [Cases cited.]

*Id.*, at 693.

I believe we should take a similar view of our Tort Claims Act. A narrow approach in considering the circumstances under which the sovereign will "permit" suits against it is not required by the words or tenor of the act; it vitiates the policy considerations prompting its enactment and will, as here, result in harsh consequences which were not intended by the legislature. Other

courts, in similar circumstances, have applied various concepts, including the discovery rule, to extend "substantive" time-bar limits. We need not, as we have on other occasions, await further legislation to deal with this matter. The wording of the statue permits application of the discovery rule to chapter 613A; policy considerations demand it.

I would reverse and remand the case for trial for the reasons stated in division I. In the alternative, under division II, I would reverse and remand for a factual determination on the issue of when plaintiff knew of her claim, or should have in the exercise of reasonable diligence. I would submit that issue to the fact finder with the other evidence in the case.

REYNOLDSON, C. J., and HARRIS, J., join this dissent.