# IN THE SUPREME COURT OF IOWA

No. 21–1015

Submitted February 22, 2023—Filed June 9, 2023

**JAMES A. STOGDILL, CHRISTOPHER DETERMAN, MATHEW D. JOHNSON, ALESHA SMITH,** and **KIRK YENTES,**

Appellants,

vs.

**CITY OF WINDSOR HEIGHTS, IOWA,** and **MUNICIPAL COLLECTIONS OF AMERICA, INC.,**

Appellees.

---

Appeal from the Iowa District Court for Polk County, Heather Lauber and Celene Gogerty, Judges.

Plaintiffs appeal from an order granting defendants' motion for summary judgment in challenge to municipality's use of an income tax refund offset program to enforce civil penalties issued pursuant to an automated traffic enforcement system. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Claire M. Diallo (argued), James C. Larew, and Deborah Svec-Carstens of Larew Law Office, Iowa City, for appellants.

Michael C. Richards (argued) and Katelynn T. McCollough of Dentons Davis Brown, P.C., Des Moines, for appellee City of Windsor Heights.

Jessica L. Klander (argued) of Bassford Remele, P.A., Minneapolis, Minnesota, for appellee Municipal Collections of America, Inc.

**McDONALD, Justice.**

The plaintiffs filed this suit to challenge a municipality's attempts to collect automated traffic citation fines not reduced to a judgment in a municipal infraction proceeding. The plaintiffs filed suit against the municipality and the municipality's collection agent. The district court dismissed all of the plaintiffs' claims. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

**I. The City's Automated Traffic Enforcement Program.**

The City of Windsor Heights uses "an automated traffic enforcement system for making video and/or photographic images of vehicles that fail to obey red light traffic signals . . . or fail to obey speed regulations." Windsor Heights, Iowa, Mun. Code § 60.02.08 (2017). Pursuant to the ordinance, the city must mail notice of an automated traffic citation to the vehicle owner within thirty days of the police department's determination that a violation occurred. *Id.* § 60.02.08(3)(A). It is the vehicle owner—rather than the driver—that is liable for the citation. *Id.* § 60.02.08(2)(A), (B). Fines for violations of the ordinance generally range from $65 to $160, with some additional fines assessed for excessive speeding. *See id.* § 60.02.08(3)(B), (C). Any violation of a city ordinance is a municipal infraction. *Id.* § 4.01. Thus, a violation of the city's automatic traffic enforcement (ATE) ordinance is a municipal infraction.

A vehicle owner receiving an automatic traffic citation may either pay the citation, contest the citation, or ignore the citation. *Id.* § 60.02.08(4). To contest the citation, the vehicle owner can submit a form to the city requesting "an

administrative review to be held at the Police Department before an impartial administrative appeals board." *Id.* § 60.02.08(4)(A). The administrative appeals board shall either uphold or dismiss the citation and shall send notice of its decision to the vehicle owner. *Id.* If the board upholds the citation, the vehicle owner can either pay the fine or request the city file a municipal infraction citation in the small claims division of the district court. *Id.* § 60.02.08(4)(A), (B). The vehicle owner can also bypass the administrative appeals board process altogether and simply request the city file a municipal infraction citation, in lieu of the automatic traffic citation, in the small claims division of the district court. *Id.* § 60.02.08(4)(B). The vehicle owner must request the city pursue a municipal infraction within thirty days of receiving the board's decision, if the owner elects the board process, or within thirty days of notice of the citation, if the owner bypasses that process and requests the city pursue a municipal infraction. *Id.* If the vehicle owner ignores the citation and does nothing, then the city can take action. *Id.* § 60.02.08(6).

The city's ordinance provides several enforcement mechanisms against a vehicle owner that does not pay an automated traffic citation, whether the owner contested the citation or not. The city may attempt further collection efforts by issuing a second notice of the automatic traffic citation. *Id.* § 60.02.08(6)(A). Under the ordinance, if the owner does not pay within thirty days of receiving the second notice, the owner "shall be deemed guilty of the violation and be held liable for the fine amount plus any additional service fees." *Id.* The city may then refer these allegedly guilty vehicle owners to a private collection agency. *Id.*

§ 60.02.08(6)(B). The city may also "[r]efer the Vehicle Owner to the State's income offset billing program for payment." *Id.* § 60.02.08(6)(C). Finally, the city may file a municipal infraction and seek a judgment in the district court. *Id.* § 60.02.08(6)(D).

The ordinance states that a private contractor may provide services in the management and operation of the ATE system. *Id.* § 60.02.08. Here, the city contracted with Municipal Collections of America, Inc. (MCA) to collect certain debts and fines, including automated traffic citations. Under the contract, the city was not required to pay MCA any fees unless MCA successfully collected fines. With respect to automated traffic citations, the contract provides that the city will add a 25% "cost of collection" fee to citations referred to MCA. The contract then provides that MCA keeps 20% of the full balance recovered, while the remaining 80% is remitted to the city.

At issue in this case is the income offset program. The income offset program is authorized pursuant to statute. *See* Iowa Code § 8A.504 (2019). The statute allows the department of administrative services to "establish a debt collection setoff procedure for collection of debts owed to the public agency." *Id.* § 8A.504(1)(*a*). This includes money owed to a "political subdivision of the state," such as the city. *Id.* § 8A.504(1)(*c*). Use of the setoff procedure is limited to only those liabilities "in the form of a liquidated sum due, owing, and payable." *Id.* § 8A.504(1)(*d*)(3). Generally speaking, with respect to the collection of ATE penalties, the setoff procedure begins when the city refers the name of a vehicle owner to the department of administrative services. *See id.* § 8A.504(2)(*b*). If the

vehicle owner is entitled to receive an income tax refund, the department provides notice to the owner that the refund will be offset by the unpaid amount of the ATE penalty. *See id.* § 8A.504(2)(*f*). The vehicle owner can either consent to the offset, pay the ATE penalty to the city directly and receive their full income tax refund, or contest the offset. *See id.* § 8A.504(2)(*h*).

The city entered into a memorandum of understanding with the department of administrative services to avail itself of the income offset program. The memorandum provided that only debts "in the form of a liquidated sum due, owing and payable" were eligible for placement in the program. The memorandum further provided that "[a]ll applicable remedies with regard to such a debt and claim must be exhausted . . . as a condition precedent for eligibility to participate in the offset program." It was the city's obligation to develop and maintain a system for reporting eligible debts to the department. According to the memorandum of understanding, the department charged an administrative fee of $7 for each debt placed in the offset program.

**II. Background and Procedural Posture.**

The procedural posture of this case is long and somewhat complicated. We discuss it at length to provide necessary context for resolving this appeal. Five plaintiffs—James A. Stogdill, Christopher Determan, Mathew D. Johnson, Alesha Smith, and Kirk Yentes—filed this suit against the City of Windsor Heights and MCA on December 19, 2019. The plaintiffs asserted the following claims: (1) the city's collection efforts, including use of the income offset program, violated the statute of limitations set forth in Iowa Code section 614.1(1); (2) the

city's ATE ordinance was an unlawful property tax not authorized by the general assembly, in violation of Iowa Code section 364.3(4); (3) the city's ATE ordinance and the city's use of the income offset program was preempted by Iowa Code section 364.22; (4) the city's use of the income offset program to enforce automatic traffic citations not reduced to a judgment constituted unjust enrichment; (5) the city's use of the income offset program to enforce automatic traffic citations not reduced to a judgment constituted conversion; (6) the city's attempts to collect automatic traffic citations violated the Iowa Debt Collection Practices Act, Iowa Code §§ 537.7101–.7103; (7) the agreement between the city and MCA to collect ATE penalties constituted a civil conspiracy; and (8) the city's use of the income offset program violated their rights to due process under article I, section 9 of the Iowa Constitution.

The defendants filed several dispositive motions in the district court, including pre-answer motions to dismiss followed by two different motions for summary judgment. In several different rulings on each of the motions, the district court dismissed all of the plaintiffs' claims. Only two of the original five plaintiffs—Determan and Smith—seek appellate review. We set forth the facts and circumstances surrounding only their claims.

**A. Plaintiff Christopher Determan.** On May 18, 2018, the city issued a notice of violation to Determan arising out of an alleged speeding violation on May 15. The fine was $65. The notice provided payment was due on June 17. The notice further provided that "[f]ailure to pay the penalty or contest liability by the due date is an affirmation of responsibility to pay the listed fine amount

and will result in this penalty being forwarded to collections and or submitted to the Iowa Income Tax Offset program." The notice provided Determan four ways to contest the violation. First, he could request an in-person administrative review. Second, he could request an administrative review by mail if he lived more than 150 miles outside the city. Third, he could request a civil infraction suit be filed in the district court. Fourth, if he no longer owned or possessed the vehicle on the date of the violation, he could directly contest liability with the "Violation Processing Center."

Determan completed the form to request an administrative review. On June 26, the city denied Determan's request for an administrative review because the request was "received too late." That same day, the city sent a second notice of violation to Determan. The second notice of violation contained the following notice:

> Please be advised that your failure to address the first Notice of Violation prior to its posted due date has resulted in an expiration of your administrative review option. This 2nd and Final Notice is considered debt due and owing to the City of Windsor Heights. Failure to pay the fine prior to the due date on this second notice OR make request for a municipal infraction citation to be filed . . . will result in a finding of "liable" and will subject you to formal collection procedures and additional associated fees.

After receiving this second notice, Determan objected to the city's contention that his request for an in-person administrative review was not timely. The city relented and scheduled an administrative review. The administrative review occurred on August 16, and Determan was found liable. The city issued him a notice stating that he had been found liable, that the amount of the fine was $65, and that the fine was due on September 15. The notice provided that the

decision could be appealed by requesting the filing of a civil infraction suit in the district court.

At this point, the proceedings against Determan came to an end. Determan did not appeal the decision. Determan never paid the fine. The city never referred Determan to collections or the income offset program. During the course of proceedings in this case, in support of its motion for summary judgment, the city filed an affidavit from the mayor of Windsor Heights stating the city will not proceed against Determan. The city specifically disclaimed "any right to proceed with any action in relation to an automated traffic enforcement (ATE) citation issued to Defendant CHRISTOPHER DETERMAN as a result of a violation on May 15, 2018." The affidavit also stated, "The City will not pursue any fines, collections, or actions connected to ATE citation in the future."

**B. Plaintiff Alesha Smith.** On March 23, 2017, the city issued a notice of violation to Smith arising out of an alleged speeding violation occurring on March 17. The fine was $65. The notice provided payment was due on April 22. As with Determan, the notice provided that "[f]ailure to pay the penalty or contest liability by the due date is an affirmation of responsibility to pay the listed fine amount and will result in this penalty being forwarded to collections and or submitted to the Iowa Income Tax Offset program." And, as with Determan, the notice provided that Smith could contest the violation the same four ways. Smith took no action.

On May 1, the city sent Smith a delinquency notice. The notice stated that her administrative options for contesting the violation had expired but that she

could request a court proceeding. The notice also stated the fine was "considered debt due and owing" to the city. In response, Smith made a written request for a hearing. On May 8, the city rejected Smith's request for a hearing on the ground her request was "received too late." The letter rejecting Smith's request provided her with options to pay the penalty online, by phone, by mail, or by MoneyGram. The letter did not provide a way to contest the violation.

At some point, the city referred Smith to the income offset program. On February 27, 2018, the city sent her notice that her income tax refund of $320 was being held because she owed "$88.00, plus any additional charges, to the City of Windsor Heights." The notice of offset provided Smith could appeal the amount of the debt by filing a notice of appeal to MCA or the city within fifteen days of the notice. The notice also stated Smith could contest the validity of the offset process by filing a written protest with the department of administrative services. The notice also stated, "**<u>DO NOT</u>** contact the Department of Administrative Services if you wish to dispute the amount in question, do not believe you owe the money, or believe you have paid the debt. Contact the City of Windsor Heights."

In response to this notice, Smith sent a letter to the department of administrative services. In the letter, she contested the violation. The letter provided, "I am contesting this ticket because the person driving the car when the ticket was issued by the camera was not me, but someone test driving my car to buy it." The letter went on to state Smith sold the car on March 20, 2017, three days after the alleged violation. Smith received no response from the

department. On April 1, she received her income tax refund. The tax refund had been offset by $88.

**C. District Court Proceedings.** The city and MCA first moved to dismiss Stogdill, Yentes, and Johnson's claims on the grounds that their claims were barred by the applicable statute of limitations and on the grounds that their claims arising under the debt collection practices act failed to state a claim upon which relief could be granted. The district court granted this motion, dismissed all claims asserted by Stogdill, Yentes, and Johnson, and dismissed plaintiffs' count six alleging a violation of the debt collection practices act.

The city and MCA then filed motions for partial summary judgment as to Smith. The defendants argued that all of Smith's claims were barred by the applicable two-year statute of limitations. *See* Iowa Code § 670.5 ("[A] person who claims damages from any municipality . . . shall commence an action therefor within two years after the alleged wrongful death, loss, or injury."). The district court granted the motions in part and denied them in part. The petition was filed on December 19, 2019. In the district court's view, the date of injury for Smith's procedural due process claim was the date of offset, April 1, 2018, and her procedural due process claim was thus not time-barred. The injury for all other claims, in the district court's view, was the date of the alleged violation, March 17, 2017, and all other claims were thus time-barred.

Following the district court's ruling on this motion, the defendants filed a motion to enlarge or amend. Defendants argued there was ambiguity in the ruling regarding the status of the other plaintiffs' claims. The district court

granted the motion and held that the only claims remaining were (1) all of Determan's claims, and (2) Smith's procedural due process claim.

The defendants then filed additional motions for summary judgment. The city argued that Determan lacked standing to assert any claim because he never paid the ATE penalty and because he was never referred to the income offset program. The city further argued Smith's procedural due process claim failed as a matter of law. MCA argued that Determan's claims against MCA failed as a matter of law because Determan's account was never sent to MCA for collections. MCA further argued that Smith's procedural due process claim failed as a matter of law because MCA (1) was not a state actor, and (2) was not involved in establishing the city's income offset program procedures.

The district court granted the city's motion for summary judgment. As to Determan, the district court concluded he did not have standing to pursue any claim relating to payment of the ATE penalty or use of the income offset program because Determan never paid the penalty and was never referred to the program. The district court concluded, however, that Determan did have an "injury-in-fact as far as the ATE ordinance and its appeals process" and "[t]herefore, Plaintiff Determan has standing to bring any remaining claims that involve the ATE ordinance, Notices of Violation, and the administrative review process for alleged violations of the ATE ordinance." The district court then went on to address the merits of his claims. The district court held that Determan's claim that the defendants violated the statute of limitations failed as a matter of law because all collection efforts directed toward Determan occurred within one year of the

alleged violation. *See* Iowa Code § 614.1(1) (providing actions to enforce payment of penalty under ordinance must be brought within one year). With respect to the rest of his claims, the district court held that (1) the city's ATE ordinance was not an unlawful tax, (2) the city's ATE ordinance was not preempted by Iowa Code section 364.22, and (3) Determan's claims for unjust enrichment, conversion, and procedural due process failed as a matter of law because he had not paid the ATE penalty and because the city specifically disclaimed "any right to proceed with any action" against him based on the challenged violation.

As to Smith, the district court held that Smith was provided with constitutionally sufficient process. The district court reasoned that Smith was provided with multiple opportunities to contest the fact of the violation and the amount of the penalty prior to being referred to the income offset program. The district court also explained that Smith was provided notice of offset and an opportunity to contest whether she owed the debt. However, contrary to the directions in the notice, Smith mailed her letter of contest to the department rather than the city. The district court concluded that although Smith "unfortunately committed an error in her attempt to contest the fine, this does not change the fact that the City did provide adequate opportunity."

The district court also granted MCA's motion for summary judgment. The district court held Determan could not assert a claim against MCA because his account was never referred to MCA for collections and he never paid any money to MCA. With respect to Smith, the district court further reasoned that MCA was merely a vendor with respect to mailing notices of violation. MCA did not

administer the income offset program, had no access to the income offset program, and was not involved in the city's referral of accounts to the department of administrative services for offset.

**III. Determan's Claims.**

Determan appeals the district court's ruling on two separate issues. He contends the district court erred in concluding the city's use of the income offset program did not violate the statute of limitations. He also contends the district court erred in concluding the city's ATE ordinance is not an unlawful property tax. He specifically states he does not appeal the ruling dismissing his state law preemption, conversion, conspiracy, unjust enrichment, and due process claims. At the outset, we question whether Determan has standing to raise any claims. The city never referred Determan to the income offset program, and the city has disclaimed any future right to enforce or collect the fine from him. Determan contends he has standing because he seeks declaratory relief and because the city could try to enforce the citation at some later date. We assume without deciding that Determan has standing, and we address his claims on the merits. *See, e.g.*, *P.M. v. T.B.*, 907 N.W.2d 522, 544 (Iowa 2018); *Ostergren v. Iowa Dist. Ct.*, 863 N.W.2d 294, 297–98 (Iowa 2015); *LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 864 (Iowa 2015).

**A. Statute of Limitations Claim.** The district court did not err in dismissing Determan's claim for violation of the statute of limitations. The statute of limitations is wholly inapplicable to the city's out-of-court collection efforts. We begin with the plain language of the relevant statute. *State v. Boone*,

989 N.W.2d 645, 649 (Iowa 2023). The statute provides, "Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared." Iowa Code § 614.1. The statute then goes on to provide that those actions "to enforce the payment of a penalty or forfeiture under an ordinance" must be brought "within one year." *Id.* § 614.1(1). As the text indicates, the statute of limitations applies only to "[a]ctions." *Id.* § 614.1; *see Downing v. Grossmann*, 973 N.W.2d 512, 518 (Iowa 2022) ("A statute of limitations governs how much time a plaintiff has to bring a cause of action after it accrues."). In this context, an "action" denotes a "judicial proceeding." *Action, Black's Law Dictionary* (11th ed. 2019).

What the text denotes, context confirms. *See Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021) ("In determining the fair and ordinary meaning of the statutory language at issue, we consider the language's relationship to other provisions of the same statute and other provisions of related statutes."); *State v. Mathias*, 936 N.W.2d 222, 227 (Iowa 2019) ("When the legislature does not define the term, we look to the context in which the term appears and give it its ordinary and common meaning."). Chapter 614, governing the limitations of actions, is set forth in title XV, subtitle 3 of the Iowa Code. Title XV relates to the judicial branch and judicial procedures, and subtitle 3 relates to civil procedure. As indicated by its placement in the Code, the statute of limitations relates to court proceedings. In addition, when the word "action" is used within title XV, it refers to court proceedings. *See, e.g.*, Iowa Code §§ 611.1 ("Every proceeding in court is an action, and is civil, special, or criminal."), .2 ("A civil action is a

proceeding in a court of justice . . . ."), .4 ("[P]laintiff may prosecute an action by equitable proceedings in all cases where courts of equity . . . had jurisdiction . . . ."); *id.* §§ 613.8 (providing state consent to "any suit or action . . . in any of the district courts of Iowa"), .11 (waiving immunity from suit and consenting to jurisdiction "of any court in which an action is brought against the state department of transportation"); *id.* § 614.14(5)(*a*) (setting forth limitations on actions "in any court" relating to interests in real estate).

The statutory text and context are confirmed by precedents. In *Dean v. Iowa-Des Moines National Bank & Trust Co.*, this court directly addressed the statute of limitations and concluded that, in this context, "an action is a proceeding in court." 281 N.W. 714 (Iowa), *modified on reh'g*, 290 N.W. 664 (Iowa 1940). Iowa's courts have repeatedly concluded that "action" refers to court proceedings. *See, e.g.*, *Jones & White v. Park*, 262 N.W. 801, 802 (Iowa 1935) ("An action is a proceeding in court." (quoting *Box v. Chi., R.I. & P. RY.*, 78 N.W. 694, 696 (Iowa 1899))); *Dille v. Plainview Coal Co.*, 250 N.W. 607, 612 (Iowa 1933) (same); *Nkanta v. Wal-Mart Stores, Inc.*, No. 12–0475, 2012 WL 5954530, at *6 (Iowa Ct. App. Nov. 29, 2012) (same); *see also Christiansen v. Emp. Appeal Bd.*, No. 11–1715, 2012 WL 4513853, at *4 (Iowa Ct. App. Oct. 3, 2012) ("Our Iowa case law recognizes that the word 'action' is a term of art and applies to proceedings in court.").

Determan also misapprehends the nature of a statute of limitations. Determan contends the city violated the statute of limitations when it sought to collect an ATE penalty more than one year after the alleged traffic violation. He

seeks damages for the alleged violation, including repayment of any funds obtained, costs, and attorney fees. A party cannot violate the statute of limitations. The statute of limitations is not a cause of action; the statute of limitations is an affirmative defense to a cause of action. *See Lasko v. Caliber Home Loans, Inc.*, No. 20–17181, 2022 WL 728820, at *1 (9th Cir. Mar. 10, 2022) (affirming dismissal of cause of action for violation of statute of limitations on ground that statute of limitations is not a cause of action); *Bank of N.Y. Mellon v. DeSelms*, No. EDCV 18–1044 PSG (MRWx), 2019 WL 8198310, at *7 (C.D. Cal. Mar. 25, 2019) ("[T]he statute of limitations provides an affirmative defense, not a cause of action."); *Miller v. Coxe*, 45 S.E. 940, 942 (N.C. 1903) (stating it is a "well-settled rule that the statute of limitations can be used only 'as a shield, and not as a sword'—as a defense, and not a cause of action"). As an affirmative defense, the statute of limitations can be waived. *See, e.g.*, *Porter v. Good Eavespouting*, 505 N.W.2d 178, 182 (Iowa 1993) ("Because the limitations defense was not raised, the defendant waived it."). When a party brings an action beyond the limitations period, the party does not violate the statute of limitations. There is nothing that prohibits a party from bringing an action beyond the relevant limitation period. The action may be barred and dismissed if the defendant timely raises and proves the limitations defense, but the party bringing the action has not violated any statute.

**B. Illegal Property Tax Claim.** Determan contends the district court erred in concluding the city's ATE ordinance is not an illegal property tax. According to Determan, the ATE ordinance "has no relation to safety" because the

ordinance fines the vehicle owner rather than the driver. Although the ATE ordinance has no relation to safety, Determan argues, the ordinance has generated millions of dollars for the city. Thus, according to Determan, the ATE ordinance is an unauthorized, *de facto* "revenue-generating personal property tax imposed in a manner that is inconsistent with the City's police powers." We disagree and conclude the district court did not err in dismissing this claim.

This court has defined a tax as "a charge to pay the cost of government without regard to special benefits conferred." *In re Shurtz's Will*, 46 N.W.2d 559, 562 (Iowa 1951). "In other words, taxes are for the primary purpose of raising revenue." *Home Builders Ass'n of Greater Des Moines v. City of West Des Moines*, 644 N.W.2d 339, 346 (Iowa 2002). The express purpose of the Windsor Heights police department's ATE system is unrelated to revenue:

> It is the policy of the Windsor Heights Police Department to operate Automated Traffic Enforcement (ATE) program . . . for the purpose of efficiently utilizing the resources of the Department; to reduce speeding violations and traffic collisions, property damage, personal injuries, and deaths; to reshape the motoring behaviors of the community; and to address neighborhood complaints of flagrant violators.

In addition, this court has already concluded that ticketing vehicle owners was a rational way to advance a municipality's public safety objectives:

> Even if we were to employ a more rigorous rational basis review, we think it is permissible under the Iowa due process clause for an ATE ordinance to allow a city to make a prima facie case of liability based upon vehicle ownership and photographic evidence that the vehicle was involved in a violation of the ordinance. The asserted governmental interest in public safety is certainly "realistically conceivable" with "a basis in fact." [The plaintiff] has developed no record suggesting that the asserted City interest is insubstantial or empirically unsustainable. As presented in this case, this means the chosen methods used by the City to advance the public interest in

safety, clearly reasonably fit the City's legitimate objective in public safety.

*City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 348 (Iowa 2015) (quoting *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 7–8 (Iowa 2004)).

While the ATE system does generate revenue for the city, revenue generation does not negate the city's stated purpose of promoting safety. *See Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 552 (Iowa 2019) ("It is, of course, true that the ATE system generates revenues for Cedar Rapids," but "[j]ust as a tax on tobacco has the potential of deterring youth smoking, Cedar Rapids may rationally believe that the impositions of fines for speeding violations generally deters speeding."). The district court did not err in rejecting Determan's claim that ATE penalties are an illegal property tax.

**C. Conclusion With Respect to Determan.** We conclude the district court did not err in dismissing all of Determan's claims against the city and MCA. We affirm the district court's rulings as to Determan.

**IV. Smith's Claims.**

Smith challenges the district court's dismissal of her claims. She contends the district court erred in holding her claims were barred by the two-year limitation period set forth in Iowa Code section 670.5. Smith further contends the district court erred in dismissing her claim that the city's use of the income offset program violated her right to due process as protected by article I, section 9 of the Iowa Constitution.

**A. The City's Defense Under Iowa Code Section 670.5.** We first address the district court's ruling regarding the limitations period. Iowa Code

section 670.5 provides that "a person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any . . . injury . . . shall commence an action therefor within two years after the alleged wrongful" injury. Pursuant to this statute, the district court dismissed all of Smith's claims except her procedural due process claim. In the district court's view, the date of injury for all of her claims, other than procedural due process, was the date of the alleged traffic violation—March 17, 2017. The district court concluded Smith's claims were time-barred because the petition was filed more than two years later—December 19, 2019. With respect to the due process claim, the court concluded the date of injury was the date Smith's tax refund was offset. The date of offset—April 1, 2018—was within the two-year limitations period.

"Although frequently referred to as a statute of limitations, section 670.5 is a statute of creation." *Venckus v. City of Iowa City*, 930 N.W.2d 792, 807 (Iowa 2019). "Chapter [670] created a new right of action—one that was not available at common law nor available elsewhere by statutory authority, and therefore, while cases interpreting other limitation statutes are helpful, they do not control here." *Id.* (alteration in original) (footnote omitted) (quoting *Montgomery v. Polk County*, 278 N.W.2d 911, 914 (Iowa 1979) (en banc)). This statute "bars any claim not filed within the requisite time period as measured from the date of injury rather than date of accrual." *Id.*

The district court erred in dismissing Smith's claims. Smith filed her petition on December 19, 2019. She is not barred from pursuing claims where her injury arose within two years of that date. She undoubtedly suffered an

injury on April 1, 2018, when her income tax refund was offset to pay the ATE penalty plus the additional costs. All of her claims relate, at least in part, to the income offset. To the extent Smith's claims assert an injury relating to the city's use of the income offset program, Smith's claims are not barred by section 670.5. Smith's challenges to conduct occurring prior to the income offset are time-barred.

**B. Procedural Due Process Claim.** Smith contends the district court erred in dismissing her claim that the city's use of the income offset program violated her right to procedural due process. "A party claiming a violation of procedural due process must first show an impairment of an interest in life, liberty, or property by government action." *Behm*, 922 N.W.2d at 566. "Once a protected interest has been established, the next question is what procedural minima must be provided before the government may deprive the complaining party of the protected interest." *Id.* "Ordinarily, the procedural minima include two components—notice and an opportunity to be heard on the issue." *Id.*

Here, Smith was provided with notice and an opportunity to be heard. "Notice must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Meyer v. Jones*, 696 N.W.2d 611, 614 (Iowa 2005) (quoting *Hutcheson v. Firstar Bank* (*In re Est. of Borrego*), 490 N.W.2d 833, 837 (Iowa 1992)). The original notice of violation provided Smith with different options to contest the violation, including the right to request the city proceed with a municipal infraction proceeding. We have already held that it does not violate

due process to require a party to request the city proceed with a municipal infraction proceeding:

> There is, however, at least one complication. The ATE ordinance puts the burden on a vehicle owner to request a hearing in small claims court. Is a requirement that a citizen take affirmative action to obtain a hearing before a small claims court consistent with due process? We think it is. The amount at stake is relatively small, and the burden of requesting a hearing is not heavy. Further, the ordinances provide a vehicle owner with the opportunity for a prior administrative hearing to challenge the automated traffic citation in an informal proceeding.

*Behm*, 922 N.W.2d at 569 (citations omitted). Smith did not timely avail herself of any of these options.

Smith argues that even if she did not avail herself of these options, the city nonetheless violated her right to due process by referring her account to the income offset program without first reducing the fine to a judgment in a municipal infraction proceeding pursuant to Iowa Code section 364.22. At first glance, her argument has some appeal. Iowa Code section 364.22 sets forth the processes and procedures required for a municipality to enforce a municipal infraction. This court has had several occasions to discuss the interplay between ATE programs and section 364.22. We have held that section 364.22 does not preclude a city from collecting a voluntary payment of ATE penalties without first filing a municipal infraction. *See Rhoden v. City of Davenport*, 757 N.W.2d 239, 241 (Iowa 2008). We have also held that section 364.22 does not preclude a municipality from offering an informal administrative hearing where vehicle owners can contest alleged ATE violations as additional process beyond what is required under section 364.22. *See City of Cedar Rapids v. Leaf*, 923 N.W.2d

184, 198 (Iowa 2018). However, in *Weizberg v. City of Des Moines* we held "that to the extent a municipality seeks to assert the coercive power of government to enforce payment of a penalty for a municipal infraction, a municipality must pursue a municipal infraction under Iowa Code section 364.22." 923 N.W.2d 200, 220 (Iowa 2019). And in *Behm v. City of Cedar Rapids*, we could not have been clearer that "no liability arises until the city takes the affirmative step of filing an enforcement action in district court and obtains a judgment against the defendant." 922 N.W.2d at 562. In other words, there is no debt due and owing in the absence of a judgment from the district court. *See id.* at 564 ("[N]o liability of any kind attaches to a vehicle owner without the filing of a municipal infraction."); *id.* at 565 (stating the relevant statutes do "not provide for any liability to arise until the [municipality] takes the affirmative step of filing an enforcement action in district court and obtains a judgment against the defendant"). We reiterated this point in *Weizberg,* stating "that no enforceable obligation will arise unless the [municipality] files a municipal infraction in small claims court and obtains a judgment." 923 N.W.2d at 215 n.4.

On closer inspection, however, the fact that the city referred Smith's account to the income offset program without first obtaining a judgment does not necessarily establish a due process violation. The government's failure to comply with a statute or ordinance does not necessarily establish a due process violation. *See id.* at 214 ("The failure to follow such a procedure or ordinance cannot give rise, in and of itself, to a due process violation."); *Behm,* 922 N.W.2d at 568 ("A mere violation of a statute does not give rise to a due process

violation . . . ."); *see also Womack v. Carroll County*, 840 F. App'x 404, 407 (11th Cir. 2020) (per curiam) ("[T]he mere violation of a state statute outlining a required procedure does not necessarily equate to a due process violation."). "[I]n all cases, the focus of the analysis must be on the critical question of whether the process that was provided comported with the basic requirements of notice and an opportunity to be heard." *Weizberg*, 923 N.W.2d at 214.

Here, Smith was given additional notice and an opportunity to contest payment of the citation. Critically, the notice of offset provided Smith with an opportunity to contest whether she owed the debt. The notice provided, "**<u>DO NOT</u>** contact the Department of Administrative Services if you wish to dispute the amount in question, do not believe you owe the money, or believe you have paid the debt. Contact the City of Windsor Heights." The city's notice did afford Smith the opportunity to contest the fact that she did not "owe the money." Smith did not avail herself of the opportunity. Smith did not follow the notice instructions; she sent her letter of contest to the department instead of the city. And she sent that notice one day too late. Smith's failure to request a hearing to contest liability as directed in the notice defeats her procedural due process claim.

**C. Conclusion with Respect to Smith.** In sum, as to Smith, we hold the district court erred in dismissing Smith's claims against the city as time-barred by Iowa Code section 670.5. Specifically, we conclude the district court erred in dismissing the following claims against the city on the ground they were time-barred: (1) violation of the statute of limitations, (2) imposition of an unlawful property tax, (3) preemption under Iowa Code section 364.22, (4) unjust

enrichment, (5) and conversion. As with Determan, however, Smith's claims for violation of the statute of limitations and imposition of an unlawful property tax fail as a matter of law even though not time-barred, and the district court should dismiss those claims after remand. We express no opinion on the merits of any of the remaining claims or any potential defenses to the remaining claims. We affirm the district court's dismissal of Smith's procedural due process claim.

**V. Claims Against MCA.**

Finally, we address the district court's grant of summary judgment in favor of MCA as to all claims. The district court concluded that MCA could not be liable for the operation of the city's ATE program, including its use of the income offset program. We agree with the district court.

The actionable conduct at the heart of Smith's claim is the submission of her debt to the income offset program. Smith fails to acknowledge that MCA plays *no role* in the referral of ATE penalties to the income offset program. MCA's sole role here was to send letters on behalf of the city. MCA was acting merely as a collection agent or third-party vendor for the city. MCA did not create or authorize the ATE program. MCA played no part in the city's decision to send a particular account to the income offset program. If MCA's letter did not result in the collection of an ATE penalty, MCA transferred the account back to the city. MCA's involvement ended there. Once an account was transferred back to the city, the city alone decided whether to refer an account to the income offset program. There is no basis to impose liability on MCA for the city's use of the income offset program. *See Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686,

707–08 (Iowa 2022) (finding third-party health plan administrator was not "agent" of state liable for discretionary choices within plan).

**VI. Disposition.**

For these reasons, we affirm in part and reverse in part the district court. The case is remanded for proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**